Opinion issued February 9, 2004 
 



 
 

 









In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-03-00551-CR
____________

EX PARTE TOMAS HORACIO RUIZ, Appellant




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 946671



 
O P I N I O N
               Appellant, Tomas Horacio Ruiz, is charged with possession of a controlled
substance, namely, cocaine weighing at least 400 grams. The trial court initially set 
bail at $1,600,000. After hearing Ruiz’s application for a writ of habeas corpus and
bond reduction, the trial court reduced the bail to $600,000, from which Ruiz appeals. 
We conclude that the trial court did not abuse its discretion and therefore affirm.
Facts and Procedural History
               Pasadena police officer W.R. Kelly testified that he assisted in a criminal
investigation of Jose Pequeno-Flores, Hugo Rodriguez, and Ruiz beginning in
February 2002. All suspects are citizens of Mexico, and Ruiz and Rodriguez are
undocumented aliens. The investigation led Kelly to believe that the three were
participating in a conspiracy to smuggle drugs from Mexico into Harris County by
driving cars with drug containers welded to their wheel rims. In March 2003,
investigators focused on a house at 4215 Oneida in Pasadena, Texas. Kelly testified
that prior to Ruiz’s arrest, he had seen Ruiz at the house on one other occasion. At
that time, Ruiz carried a white plastic bag out of the house, got in his car, and left.
               On the day of the arrest, Kelly saw Pequeno-Flores carry a container into
the house. Kelly walked next to the garage door and heard muffled banging noises
coming from the garage area. He later made the connection that those muffled
banging noises could have been made by kilos of cocaine being dropped into the
washer and dryer. Kelly then saw Ruiz arrive at the house in an Acura. Ruiz moved
some cars around in the driveway, backed a minivan out of the garage, loaded
suitcases and clothing into various vehicles, and loaded a blue plastic container into
the rear of the Acura. Since the blue plastic container was opaque, Kelly did not
know what was in it.
               Rodriguez arrived at the house and drove the Acura away. By that time, the
drugs already had been loaded into the trunk of the vehicle in a container. Police
officers stopped Rodriguez while he drove the Acura, arrested him, and recovered
eight kilograms of cocaine. Rodriguez admitted to police that he had made up to 14
earlier trips transporting cocaine from the house to unknown locations. Thereafter,
the police arrested Ruiz and his father at a Jack-in-the-Box and searched Ruiz’s car. 
A drug dog indicated sensitivity that “something had been there at one time,” but
police found no drugs in the car. Kelly testified that the police arrested Ruiz because
Kelly saw Ruiz load the blue container into the Acura, and police later found it with
eight kilograms of cocaine in it.



               Altogether, police recovered 27.65 kilograms of cocaine from the Oneida
house, 27.90 kilograms of cocaine from a vehicle parked in the garage, and eight
kilograms of cocaine in a blue plastic container found in the rear of an Acura car. 
The street value of a kilogram of cocaine is about $100,000. Thus, the total alleged
value of the cocaine the police recovered is around $5.5 million. Police also seized
$690,000 in cash from a tire rim at the scene. 
               Ruiz is married and has a two-year-old daughter, born in Galveston. His
mother and father, cousins, and aunts and uncles reside in the Houston area. He also
has family in Mexico. He has resided in the United States for seven years and in the
Houston area for four years. Ruiz has carpentry and painting skills, has worked for
a construction company in Houston for three years, and would have work to do if he
were released on bond. Ruiz’s pretrial interview form shows that Ruiz is 22 years
old, has an eighth grade education, makes $2,400 per month, and has expenses of
$730 per month, including $400 per month rent for a residence in Houston. He has
three dependents. He owns a Ford Taurus worth $5,000. Ruiz has no prior criminal
record in this country. A bail bondsman testified, based on interviews with Ruiz’s
father and wife, that Ruiz’s wife and father owned several used cars and maintained
a $1,000 bank account. The largest bond they could make would be a $10,000 bond. 
Ruiz did not testify regarding his personal financial circumstances.
Legal Authority
The standard of review for reviewing bail settings is whether the trial court
abused its discretion. See Ex parte Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App.
1981). In the exercise of its discretion, a trial court should consider the following
factors in setting a defendant’s bail:
          1.       The bail shall be sufficiently high to give reasonable assurance
that the undertaking will be complied with. 
          2.       The power to require bail is not to be used as an instrument of
oppression.
          3.       The nature of the offense and the circumstances of its commission
are to be considered. 
          4.       The ability to make bail is to be regarded, and proof may be taken
on this point. 
          5.       The future safety of a victim of the alleged offense and the
community shall be considered. 
 
Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2004); see Ludwig v. State,
812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that the court is “to be governed
in the exercise of [its] discretion by the Constitution and by the [article 17.15
factors]”).


 The burden of proof is upon a defendant who claims bail is excessive. 
Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981); Ex parte Martinez-Velasco,
666 S.W.2d 613, 614 (Tex. App.—Houston [1st Dist.] 1984, no pet.). The primary
purpose for setting bond is to secure the presence of the defendant in court at his trial. 
Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); Ex parte Bonilla,
742 S.W.2d 743, 744 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The amount
of bail should be set sufficiently high to give reasonable assurance that the accused
will comply with the undertaking, but should not be set so high as to be an instrument
of oppression. Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); Ex
parte Willman, 695 S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.] 1985, no pet.). 
Courts should also consider the defendant’s work record, family ties, residency and
past criminal record. See Rubac, 611 S.W.2 at 849; see also Martinez-Velasco, 666
S.W.2d at 614-15. 
Discussion
A. Nature of the Offense
     The record reflects that on the day Ruiz loaded a blue plastic container into
the back of an Acura, Rodriguez arrived at the Oneida house and drove the Acura
away. Police later arrested Rodriguez and recovered eight kilograms of cocaine in
a blue plastic container in the rear of the Acura. Rodriguez made a statement to
police in which he admitted that he has made 14 trips transporting cocaine from 4215
Oneida to unknown locations. After Rodriguez’s arrest, police arrested Ruiz, and a
drug dog indicated sensitivity to something that had been in Ruiz’s car. On the day
of Ruiz’s arrest, in the residence where police had observed Ruiz loading containers
into various vehicles and moving a vehicle out of the garage, the police recovered
over 55 kilograms of cocaine and had recovered $690,000 in cash from a tire rim.
The State has charged Ruiz with possession of a controlled substance with
intent to deliver in an amount weighing more than 400 grams, a first degree felony. 
See Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). The offense
carries a sentence of 15 to 99 years or life and a fine not to exceed $250,000. Tex.
Health & Safety Code Ann. § 481.112(f) (Vernon 2003). In this case, in addition
to the large amount of drugs involved, there is a concern on the part of law
enforcement officials that a drug smuggling operation exists, with the Oneida house
as its nexus. The nature of the offense is serious, carries a substantial penalty, and the
circumstances indicate an organized drug smuggling operation. The trial court could
have reasonably concluded that the nature of the offense did not favor a further bond
reduction.
B. Sufficient Bail to Assure Appearance But Not Oppress
     The State introduced evidence supporting the theory that Ruiz participated
in a drug smuggling operation that generated large amounts of cash. Illegal drug
smuggling operations of the kind alleged often require large amounts of cash and the
involvement of financial backers willing to forfeit bonds that are not sufficiently high. 
Willman, 695 S.W.2d at 753. When considered with the facts that Ruiz gave no
evidence regarding his own personal financial resources, and that the street value of
the cocaine recovered from the scene far exceeds the bail amount, the trial court
reasonably could have concluded that Ruiz had failed to carry his burden to show that
the trial court had set excessive bail. See Ex parte Chavfull, 945 S.W.2d 183, 186,
187 (Tex. App.—San Antonio 1997, no pet.) (held bail reduction unwarranted when,
among other things, defendant put on no evidence of his own individual resources).
C. Ability to make bail
     Ruiz introduced evidence from a bail bondsman that the largest bond Ruiz’s
wife and his father could make was $10,000. The bail bondsman did not interview
Ruiz, however, and did not testify regarding Ruiz’s financial circumstances. The trial
court could reasonably have found that the family’s resources were not the only ones
available to Ruiz and therefore that he did not carry his burden to establish that he is
unable to make bail, particularly given the recovery of a substantial amount of
cocaine and $690,000 in cash. See id.
D. Other Factors
     No one offered evidence as to the fifth factor specified in article 17.15—the
future safety of a victim of the alleged offense and the community. A trial court
should not ignore, however, the negative impact the possession and distribution of
cocaine has on the safety of the community. Maldonado v. State, 999 S.W.2d 91, 97
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d). Additional factors to consider
in reviewing a bond decision include Ruiz’s work record, family ties, length of
residency, and past criminal record. 
Ruiz has lived in this country for seven years and Harris County for four years. 
He has worked in Houston for three years for a construction company as a carpenter
and painter. He would have a job to go to if released on bond. Ruiz has ties to the
community living here with his wife and daughter and with his mother, father, aunts,
and uncles in close proximity. He has no prior criminal record in this country. These
factors weigh in favor of a lower bond.
The trial judge, however, weighed these factors along with the fact that Ruiz
is an undocumented alien, in this country illegally, and is a Mexican citizen with
family in Mexico. The allegations at issue involve a drug smuggling operation via
cars transported between Texas and Mexico. Given the evidence of Ruiz’s potential
risk of flight, we cannot say that the trial court abused its discretion.
Conclusion
This incident involves a large quantity of illegal drugs and cash. Ruiz has not
produced evidence of his own lack of financial resources for making bail. The
alleged first degree offense carries a serious penalty. Ruiz’s ties to the community,
work history, and lack of a criminal record in this country are offset by the fact that
he is a Mexican native, illegally residing here, with family ties and associates residing
in Mexico. The trial court thus reasonably could have concluded that he poses a
flight risk to Mexico.
Given the totality of the circumstances, the trial judge did not abuse her
discretion in setting bail. We therefore affirm the order of the trial court.
 
 
                                                   Jane Bland
                                                   Justice
 
Panel consists of Justices Taft, Keyes, and Bland.

Publish. Tex. R. App. P. 47.2(b).