Opinion issued November 1, 2007


















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00685-CR




EX PARTE JAMAAL AKIL LONG, Appellant




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1126565



 
MEMORANDUM OPINION
          Appellant, Jamaal Akil Long, challenges the trial court’s order denying his
request to reduce his pretrial bail from $500,000. We affirm. 
I. Background
          On December 6, 2006, Houston Police officers executed a search warrant at
3727 Cosby where Long lived. Long was not there at the time, but a grandmother and
two children were. The police found 9.3 kilos of cocaine, a diamond watch, 11
firearms, and three new flat screen television sets.
          On January 2, 2007, a warrant was issued for Long’s arrest, and on January 12,
2007, the State indicted Long for possession with intent to deliver cocaine weighing
at least 400 grams. Long’s live-in companion, Marchanel, testified that a few weeks
before the August 8, 2007 habeas hearing, appellant learned of the warrant for his
arrest and that bail had been set at $2.4 million.


 They consulted legal counsel, who
advised them that the offense with which Long was charged was a first degree felony,
punishable by up to life in the penitentiary. According to Marchanel, Long
surrendered himself to the Harris County Sheriff’s Office on July 16, 2007.
          On July 23, 2007, the parties approached the bench to ask about the bail, and
the trial court lowered it to $500,000. Two days later, Long filed his application for
writ of habeas corpus, asserting that the $500,000 bail is excessive. 
          At the habeas hearing, Long introduced evidence through the testimony of his
uncle Eddie, that he was born and raised in Houston. Before Marchanel moved in
with Long, he lived at 3727 Cosby in a house belonging to Eddie. For the last two
years, Long has worked for Eddie in the carpet business, a job to which he could
return if he were released on bond. Eddie, who has known Long all of his life, pays
him at least cash of $450 per week. Long has two children, ages five and 10, whom
he supports. The five-year-old’s mother is Marchanel. In March 2007, Marchanel,
who has known Long for eight years, purchased from Eddie the house at 3727 Cosby
where she, Long, and their son now live. The insurance on the house is carried in
Long’s name. Long owns no passport.
          As far as Eddie knows, Long has no bank accounts and no homes. His only
asset is a 2005 GMC truck, which Long has given Eddie to raise money to make a
bond. Eddie has spoken to a bail bondsman and, given the collateral that Long’s
friends and family are willing to pledge, the maximum bond that can be made is for
$200,000. Eddie testified that, if Long purchased the cocaine, weapons, watch, and
flat screen television sets found in 3727 Cosby, it is a possibility that Long has some
other source of income that Eddie does not know about.
          Marchanel testified that she works at Methodist DeBakey Cardiology making
about $3,000 a month. To Marchanel’s knowledge, Long has not been convicted of
a felony in Texas or any other state, but she is aware that Long has had some
misdemeanor trouble. Marchinel does not know whether Long was working before
2005. She does not know where Long would get the money to buy the 11 weapons
and the three flat screen television sets. She agrees that there is a lot about Long’s
comings and goings she does not know because she is working.
          Houston Police Officer Saulter testified that the street value of 9.3 kilos of
cocaine would be over $900,000. Saulter also testified that several of the 11 weapons
seized were assault weapons. One was a Herstal semi-automatic pistol that shoots a 
bottleneck cartridge designed to defeat a bullet-proof vest. Another firearm seized
was an AR-15, a civilian version of the M-16 semiautomatic military rifle. A third
firearm seized was a Carbon 15, which is basically an AR-15 that has been cut down
to be compact. It also shoots the bottleneck cartridge. The AR-15 is worth about
$1,000, the Carbon 15 would probably be more expensive than the AR-15, and the
Herstal’s value would be in the $1,500 range. Amongst the other weapons were a Sig
Sauer, a Mauser, a Smith and Wesson, a Keltic rifle, a Vulcan Arms rifle, which is an
assault weapon, and a Winchester shotgun. Saulter believes one of the weapons was
reported stolen. 
II. Standard of Review
          The standard of review for reviewing bail settings is whether the trial court
abused its discretion. Ex parte Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App.1981);
Ex parte Ruiz, 129 S.W.3d 751, 753 (Tex. App.—Houston [1st Dist.] 2004, no pet.). 
In the exercise of its discretion, a trial court should consider the following factors in
setting a defendant’s bail:
1. The bail shall be sufficiently high to give reasonable assurance that the
undertaking will be complied with.

          2. The power to require bail is not to be used as an instrument of oppression.
 
3. The nature of the offense and the circumstances of its commission are to be
considered.
 
4. The ability to make bail is to be regarded, and proof may be taken on this
point.
 
5. The future safety of a victim of the alleged offense and the community shall
be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); Ludwig v. State, 812 S.W.2d
323, 324 (Tex. Crim. App. 1991) (noting that the court is “to be governed in the
exercise of [its] discretion by the Constitution and by the [article 17.15 factors]”). 
The burden of proof is upon a defendant who claims bail is excessive. Rubac, 611
S.W.2d at 849;Ex parte Martinez-Velasco, 666 S.W.2d 613, 614 (Tex.App.—Houston
[1st Dist.] 1984, no pet.). The primary purpose for setting bond is to secure the
presence of the defendant in court at his trial. Ex parte Vasquez, 558 S.W.2d 477,
479 (Tex. Crim. App. 1977); Ex parte Bonilla, 742 S.W.2d 743, 744
(Tex.App.-Houston [1st Dist.] 1987, no pet.). The amount of bail should be set
sufficiently high to give reasonable assurance that the accused will comply with the
undertaking, but should not be set so high as to be an instrument of oppression. Ex
parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App.1977); Ex parte Willman, 695
S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.] 1985, no pet.). Courts should also
consider the defendant’s work record, family ties, residency, past criminal record, and
conformity with previous bond conditions. Rubac, 611 S.W.2d at 849; Ex parte
Martinez-Velasco, 666 S.W.2d at 614-15.
III. Discussion
          Appellant’s sole issue is whether the trial court erred in refusing to reduce the
amount of bail.
A. Nature of Offense and Circumstances of Commission
          In considering the reasonableness of bail, the nature of the offense is a primary
factor. Rubac, 611 S.W.2d at 849. 
          Regarding the circumstances of the commission of the offense, Long cites Ex
parte Parish, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980) for the proposition that
the strength of evidence of the crime presented at the habeas hearing is a factor in
determining the amount of bail. Long continues, “The habeas record reflects only
that a search warrant was issued at 3727 and the alleged street value of the items
seized.” Long’s reliance on Parish and Long’s characterization of the record miss the
mark.
          Regarding the record, Long overlooks Eddie’s testimonial evidence that 3727
Cosby is where Long lives and that the homeowner’s insurance on that residence is
in Long’s name. Regarding Long’s reliance on Parish, he overlooks the fact that, in
a bail reduction hearing, the burden of proof to show that the bail is excessive is on
the applicant. Rubac, 611 S.W.2d at 849. Long’s guilt or innocence was not before
the trial court.
          The record reflects that, on the date the police executed the search warrant at
3727 Cosby, where Long resided and where he carries the homeowners insurance, the
police found 9.3 kilos of cocaine worth over $900,000, 11 firearms, including assault
weapons capable of firing bullet-proof vest penetrating bullets, a diamond watch, and
three new flat screen television sets. Long offered no evidence to show that the
police did not find these items in his residence or that they were possessed or owned
by anyone else. Additionally, there is evidence that a grandmother and two children
were in the midst of this potentially dangerous environment. The trial court could
have reasonably concluded that Long did not carry his burden to show that the
circumstances of the commission of the offense warranted a bond reduction when
there was evidence to suggest that Long was connected with a drug stash house
operation involving a large amount of illicit drugs worth nearly one million dollars,
extensive lethal, police jeopardizing weaponry, and exposure of an elderly woman
and children to the inherent dangers of such an environment.
B. Long’s Ability to Make Bail, Sufficiency of Bail Amount to Assure Court 
 Appearances and not Oppress Defendant

          Through Eddie’s testimony, Long introduced evidence that Long owned no
bank accounts or homes and that his only asset was a 2005 GMC truck. Further,
Long introduced evidence that, based on the collateral that Eddie and Long’s family
is willing to pledge, the maximum bond that the bondsman will make is $200,000. 
Eddie testified, however, that, if Long purchased the 9.3 kilos of cocaine, the 11
firearms, and the flat screen television sets, it is possible that Long has a source of
income of which Eddie is unaware. Further, Long did not speak with the bondsman
or testify concerning his personal assets.
          Additionally, evidence before the trial court suggesting that the nature of the
offense was a stash house operation involving $900,000 worth of illicit drugs gives
rise to the presumption that such drug offenses usually require large amounts of cash
and involvement of financial backers willing to forfeit bonds that are not sufficiently
high. See Willman, 695 S.W.2d at 753. The trial court could have reasonably
concluded that further bond reduction was not warranted because Long did not show
that: (1) he could not afford the bail as set, (2) the bail was set higher than necessary
to assure his appearance at future court hearings, and (3) the bail set was oppressive
to Long.
C. Future Safety of Alleged Victims and the Community
          There was no evidence that, if released on bai,l Long would pose a threat to the
community.
D. Other Risk of Flight Considerations
          Considerations such as potential punishment, family ties, residency, work
history, prior criminal record, and conformity with previous bond conditions are
additional factors relevant to whether Long would be a flight risk. See Rubac, 611
S.W.2d at 849.
          Here, Long is indicted for possession with intent to deliver more than 400
grams of cocaine. The range of punishment for such an offense is imprisonment for
life or for a term of not more than 99 years or less than 15 years, and a fine not to
exceed $250,000. Tex. Health & Safety Code Ann. § 481.112(f) (Vernon 2003). 
Because the minimum punishment is 15 years confinement, Long is not eligible for
community supervision. Tex. Code Crim. Proc. Ann. art. 42.12 §3(b), §4(b)
(Vernon 2006); Cabezas v. State, 848 S.W.2d 693, 694 (Tex. Crim. App. 1993). At
trial, however, if the trial court finds the best interest of society and the defendant will
be served, the trial court may, after receiving a plea of guilty or nolo contendere,
hearing the evidence, and finding that it substantiates the defendant’s guilt, defer
adjudication of guilt and place the defendant on community supervision. Tex. Code
Crim. Proc. Ann. art. 42.12 §5(a) (Vernon 2006); Cabezas, 848 S.W.2d at 694-95. 
The punishment for the offense with which Long is charged is significant.
          Regarding other flight risk considerations, the record reflects Long’s long
residency in the area and family ties of two children and an uncle. There is evidence
that, for the last two years, Long has worked for Eddie, but no evidence of work
history beyond that, despite the fact that Eddie testified he had known Long all of his
life and that Marchanel testified she had known Long since 1999. Through
Marchanel’s testimony, there is evidence that Long has had misdemeanor trouble of
an unspecified nature. There was no evidence concerning whether Long had previous
bonds. Long introduced evidence that he had no passport and that, knowing the high
side of the range of punishment for the offense with which he is charged, he
surrendered himself to the Sheriff. On balance, these additional flight risk
considerations tend to favor bail reduction.
IV. Conclusion
          Long’s lifelong residency in the area, family ties to two children he supports
and an uncle, a job to return to if released on bond, the lack of a passport, the lack of
a criminal record except for some misdemeanor trouble, and the fact that he
surrendered himself to the Sheriff all favor reducing the bail. Against these items, the
trial court could have weighed the fact that there was unrebutted evidence to suggest
that the nature of the offense was such that Long was connected with a drug stash
house operation involving a large amount of illicit drugs worth nearly one million
dollars; extensive lethal, police jeopardizing weaponry; and exposure of an elderly
woman and children to the inherent dangers of such an environment. When such
evidence of the nature of the offense is added to evidence from Eddie and Marchanel
that they do not know how Long could afford the drugs, firearms, television sets, and
watch, along with the fact that Long did not personally talk to the bondsman or testify
about his personal assets to make a bond, we conclude the trial court did not abuse
its discretion by refusing to lower the bail from $500,000. We overrule Long’s sole
issue and affirm the trial court’s order.
 
                                                                                  George C. Hanks, Jr.
                                                                                  Justice

Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).