**Opinion issued February 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00048-CR

———————————

## BRANDON EUGENE WILSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 178th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 1372430**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from a bail proceeding. *See* TEX. R. APP. P. 31. Appellant Brandon Wilson has been charged with possession with intent to deliver a controlled substance, fraudulent transfer of a motor vehicle, theft, and

burglary of a habitation. *See* TEX. PENAL CODE ANN. §§ 30.02(a), 31.03, 32.34 (West 2011); TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2008). His pretrial bond was set at $140,000 in aggregate, with $100,000 set as bail for his drug possession charge. He filed a motion to reduce bail, which was denied by the trial court. Wilson appeals from the order denying his motion. *See* TEX. R. APP. P. 31. We affirm.

## Background

Wilson was arrested in July 2010 and charged with burglary of a habitation. The State alleged that on or about July 19, 2010, Wilson "did then and there unlawfully, with intent to commit an assault, enter a habitation owned by" another and "he used and exhibited a deadly weapon, namely, a FIREARM, during the commission of said offense." The case was assigned to the 178th District Court, and bail was set at $30,000. Wilson spent several months in custody until his family was able to obtain sufficient funds to enable him to post bond. After he posted bond, Wilson was released.

On February 29, 2012, while still free on bond for the burglary charge, Wilson was arrested and charged with possession with intent to deliver a controlled substance. The State alleged that on or about February 29, 2012, he "did then and there unlawfully, knowingly possess with intent to deliver a controlled substance,

namely, COCAINE, weighing more than 4 grams and less than 200 grams by aggregate weight."

In addition to the drug charge, Wilson was arrested in connection with outstanding warrants for charges pending against him for the theft and fraudulent transfer of a motor vehicle. The State alleged that Wilson did, on or about January 16, 2012, "unlawfully, appropriate by acquiring and exercising control over property, namely, A MOTOR VEHICLE, owned by [Complainant] of the value of over twenty thousand dollars and under one hundred thousand dollars, with intent to deprive the Complainant of the property." The State further alleged that then Wilson did "unlawfully accept possession of a motor vehicle from [Complainant], with a value of less than twenty thousand dollars, knowing that the vehicle was subject to a security interest and lien, and then transferred the vehicle to third party without firsts [sic] obtaining written authorization from the vehicle's secured creditor and lien holder."

All of these new charges were assigned to the 178th District Court. Initially, no bail was set in the theft and fraudulent transfer cases, but bail was set at $20,000 in the drug possession case. Bail was subsequently set at $5,000 in the each of the theft and fraudulent transfer cases, and the bail in the possession case was raised to $100,000. In sum, Wilson's cumulative bail for the four pending charges is now set at $140,000.

On November 16, 2012, Wilson filed an original application for a writ of habeas corpus in the trial court. In his application, he alleged that he is a resident of Harris County, Texas, and that he and all his family members reside in and around Houston. He alleged that they would attest that he is not a flight risk. He claims that he is unable to post bond for the $140,000 bail amount, and he remains incarcerated in the Harris County jail.

On January 4, 2013, the trial court held a hearing on Wilson's application. Wilson presented one witness—his mother, Linda Marshall. She testified that their family had difficulty in collecting the $3,000 they had used to post bond for his initial burglary charge. She further testified that Wilson has no savings, bank accounts, stocks, bonds, or real estate. His only personal property is an inoperative car valued at approximately $500. When he was released on bail previously, Wilson worked and was able to pay his own living expenses. His mother testified that the family could possibly assemble, at most, $3,000 more, which would be sufficient to post a bond covering an additional $30,000 in bail. She believed that the bond company would reinstate his original bond for the burglary case, so Wilson could post bond if the bail for the three charges of theft, fraudulent transfer, and possession of cocaine was no more than $30,000.

Wilson also presented evidence in an attempt to establish that he would have a credible defense to each of the charges against him. Regarding the burglary

charge from 2010, he presented his cousin's sworn statement that Wilson was watching her children on the day of the burglary. The man charged with committing the burglary with Wilson, who pleaded guilty to the crime, stated that Wilson did not accompany him during the burglary and that he did not see Wilson on the day in question.

Regarding the theft and fraudulent transfer of a vehicle charges, Wilson's mother testified that he had not stolen the car in question. Instead, Wilson had rented the car to go on a family trip to Mississippi. His mother testified that she saw Wilson return the car to the rental company's parking lot. A receipt for the car rental showing that Wilson had paid for and returned the car was introduced as an exhibit. Wilson also introduced the offense report for the incident. In it, the man who bought the fraudulently transferred car failed to identify Wilson in a photo array as the person who sold him the car.

With respect to the cocaine charge, Wilson contends that he has an illegal-search defense because the police had "no reason" for pulling over the car which he was driving. Wilson offered a statement of the car's passenger to support this contention, and his mother testified there was no stop sign at the intersection where he was pulled over, although the police officer stated that he stopped the car because it passed a stop sign without stopping.

5

The State argued that Wilson's bail amount was proper because he had committed three new offenses while released on bond for the burglary charge. The mother's story that she had seen Wilson return the car was called into question because employees of the rental company attested that the car was not returned. The State also referred to a voluntary statement by a witness, Bradley Rhodes, who stated that he had worked with Wilson to steal and fraudulently transfer the car. Another witness corroborated Rhodes's statement that Wilson was involved in the fraudulent transfer. Based on these factors, the State argued that Wilson is a danger to society and requested that the bail remain the same for the safety of the community.

Wilson's counsel requested that bail for the drug charge be reduced from $100,000 to $20,000. The trial court denied habeas corpus relief and the request to reduce bail. The court continued to set bail at $100,000 for the drug charge in the interest of protecting the public safety from further criminal actions. Wilson filed notice of appeal on the same day.

**Analysis**

The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII; *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S. Ct. 479, 484 (1971) (applying Eighth Amendment prohibition

6

of excessive bail to the States).  Likewise, the Bill of Rights contained within the Texas Constitution provides that "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law."  TEX. CONST. art. I, § 11.  The Texas Bill of Rights further specifies that "Excessive bail shall not be required . . . ." *Id.*, art. I, § 13.

The standard for reviewing whether excessive bail has been set is whether the trial court abused its discretion.  *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Cooley v. State*, 232 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  In the exercise of its discretion, a trial court should consider the following factors in setting a defendant's bail before trial:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.

7

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005); *see Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991); *Montalvo*, 315 S.W.3d at 592. A defendant carries the burden of proof to establish that bail is excessive. *Ex parte Rubac*, 611 S.W.2d at 849; *In re Hulin*, 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.). In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is at least within the zone of reasonable disagreement. *Cooley*, 232 S.W.3d at 234; *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)). We acknowledge, however, that an abuse-of-discretion review in this context requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *Cooley*, 232 S.W.3d at 234. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *Id.*

The primary purpose for setting bail is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should

8

not be set so high as to be an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); *Montalvo*, 315 S.W.3d at 596. Courts should also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved in the offense. *See Ex parte Rubac*, 611 S.W.2d at 849–50; *Montalvo*, 315 S.W.3d at 596.

## I.    Sufficiency of bail

Because Wilson is complaining that bail of $140,000 is excessive, and as the State asked the trial court to continue to set bail at that amount, there is no dispute that the bail set by the trial court is sufficiently high to give reasonable assurance that Wilson would comply with the undertaking of appearing in court as required in the future.

## II.    Nature and circumstances of the offense

Wilson has been charged with a second-degree felony count of possession of more than four grams but less than 200 grams of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). Additionally, Wilson has been charged with a first-degree felony count of burglary of a habitation, *see* TEX. PENAL CODE ANN. § 30.02(d), a third-degree felony count of theft of property of a value of over $20,000 and under $100,000, *see id*. § 31.03(e)(5), and a state-jail felony count of fraudulent transfer of a motor vehicle with a value of less than

9

$20,000. *See id.* § 32.34(f)(1). Our consideration of the nature and circumstances of the offense requires that we take note of the range of punishment permitted by law in the event of a conviction. *See, e.g.*, *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980); *Ex parte Reyes*, 4 S.W.3d 353, 355 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The punishment for unlawful possession of a controlled substance weighing more than four grams but less than 200 grams ranges from 2 to 20 years in prison, and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33 (West 2011). In this case, the potential unenhanced punishment for burglary of a habitation ranges from 5 to 99 years or life in prison. *Id.* § 12.32. The punishment for theft ranges from 2 to 10 years in prison, and the punishment for the fraudulent transfer of a motor vehicle ranges from 6 months to 2 years. *Id.* §§ 12.34, 12.35. With the exception of the theft and fraudulent transfer charges, which arise out of the same criminal episode, the trial court would have discretion to order these sentences to run either consecutively or concurrently. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2012); TEX. PENAL CODE ANN. § 3.03 (West Supp. 2012) (requiring concurrent sentence when offense arise from same episode prosecuted in single action).

We have reversed bail amounts of $100,000 or more in cases in which the amount of drugs allegedly possessed is small and there is no evidence that the defendant poses a flight risk. In *Golden v. State*, this court reduced a bail amount

of $200,000 for each of two drug possession charges, an aggregate amount of $400,000, to $75,000 for the second-degree felony charge and $50,000 for the third-degree felony possession charge. *Golden*, 288 S.W.3d at 521. The amount of drugs for the second-degree felony charge in *Golden* was between 4 grams and 200 grams, far less than the multiple-kilogram amounts of cocaine that had justified high bail in other cases. *Id.* at 520 (distinguishing *Ex parte Ruiz*, 129 S.W.3d 751 (Tex. App.—Houston [1st Dist.] 2004, no pet.), and *Ex parte Willman*, 695 S.W.2d 752 (Tex. App.—Houston [1st Dist.] 1985, no writ)). The court in *Golden* also noted that while possession of large amounts cocaine in excess of 400 grams would weigh in favor of high bail because of the effects such a large amount of drugs would have on the community, a charge for a low quantity of drugs without the involvement of a weapon or violence weighs against setting a high bail amount. *Id.* at 519 (citing *Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). Unlike other cases with high bail, the State had not presented any evidence in *Golden* that the defendant was not a U.S. citizen or posed any flight risk. *Id.* at 520.

Wilson, like the defendant in *Golden*, was charged with possession between 4 grams and 200 grams of illegal narcotics. *See id.* at 520. Wilson's attorney argues that the amount of drugs is likely to not weigh much more than four grams, but the evidence for that inference is not included in the record. Wilson's drug

11

charge is not alleged to have involved a weapon. And Wilson is not alleged to be a foreign national, to pose a flight risk, or to have been involved in an organized smuggling operation.

But unlike the defendant in *Golden*, Wilson was charged with new offenses while released on bail. Under the bail schedule established by the district judges of Harris County, which this court has considered in the past in reviewing bail determinations for Harris County defendants, *see, e.g.*, *Ex parte Borgia*, 56 S.W.3d 835, 838 (Tex. App.—Houston [1st Dist.] 2001, no pet.), the standard amount of bail for a defendant already released on bail for any felony charge is specified as "no bond." *See* District Court Bail Schedule, Harris County Administrative Offices of the District Courts (effective Jan. 1, 2007), http://www.justex.net/BailBondSchedule.aspx. When Wilson was charged with possession of illegal narcotics, he already had been released on bail for the first-degree felony charge of burglary of a habitation. According to the schedule, the trial court could have set bail as "no bond" and Wilson thereby would have been prevented from making bail at all. Instead, the trial court set bail for the drug charge at $100,000, which was more advantageous than the standard bail schedule insofar as it allowed Wilson the opportunity to make bail. In sum, the fact that Wilson was already free on bail at the time of the newly alleged offenses is a circumstance which weighs against the reduction of bail.

12

Wilson also argues that he has a potentially valid illegal-search defense to his possession charge, which should be a factor favoring the reduction of bail. According to Wilson, the police officer who stopped him said that he did so because Wilson had failed to stop at a stop sign. Wilson's mother testified that she knew of the intersection at which Wilson was stopped, and that there was no stop sign there. A passenger who was in the car stated in a sworn statement that the police pulled over Wilson "for no reason." To the extent that he relies on this evidence to support a defense that his car was illegally searched in violation of the Fourth Amendment, however, Wilson has not shown that he has filed a motion to suppress or otherwise raised his defense in court, where it could be tested. Nor did he present any evidence from the police officer about the search. Accordingly, Wilson presents only one-sided, self-serving arguments that the prosecution has not had the opportunity to contest. We therefore do not consider this purported defense as a circumstance that should decrease bail for his drug charge.

With respect to the other charges against him, Wilson generally complains about the aggregate amount of bail, but he fails to present specific arguments that the amount of bail set for the other charges is excessive. Wilson requests that his bail be reduced from $140,000 in aggregate to $60,000, or, in other words, a reduction in bail for his possession charge from $100,000 to $20,000. This is the amount he believes he can afford, because he can have the $30,000 bond for his

burglary charge reinstated by the bondsman and he can post a new bond for up to $30,000 more. To the limited extent that he challenges the bail for his other charges, we consider that Wilson denies his involvement in the burglary and rental car theft and fraudulent transfer. He presented statements from the man convicted of the burglary, saying that Wilson was not involved, and his mother, saying that she saw him return the car in question. The State did not address his burglary contentions but indicated that there were two other witnesses who confirm Wilson's involvement in those crimes, contrary to his witnesses.

## III. Future safety of complainants and the community

Wilson has not directly addressed the future safety of the complainants. There was no evidence at the hearing on Wilson's application to suggest whether he presents any threat to the complainants in the case.

The future safety of the community, however, evidently was a paramount consideration in assessing bail. The State argued that Wilson posed such a danger because he was charged with three additional offenses when he was released on bail. The trial judge orally stated at the conclusion of the hearing that he was denying the request to reduce bail "in [the] interest of protecting the public safety and ensuring defendant's attendance in court and protecting the public from further criminal actions." The trial court may consider that the defendant continued to commit crimes while released on bail as a continuing danger to the public. *Ex*

14

*parte Jackson*, No. 14-10-00979-CR, 2011 WL 166933, at *5 (Tex. App.—Houston [14th Dist.] Jan. 13, 2011, no pet.); *see also Patterson v. State*, 841 S.W.2d 534, 535–36 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (considering the entire record, including the fact that defendant charged while on bond for two other crimes, in affirming $150,000 bail for possession of 1.2 kg of cocaine). Considering the number of offenses and the deadly weapon allegation in the burglary charge, this factor favored a high amount of bail to ensure the safety of the community as a whole. *See Ex parte Jackson*, 2011 WL 166933 at *5; *see also* TEX. CODE CRIM. PROC. ANN. art. 17.40 (West Supp. 2012) (permitting consideration of public safety in imposing a condition on pre-trial bail); *Ex parte Anderer*, 61 S.W.3d 398, 406 (Tex. Crim. App. 2001).

## IV.   Ability to make bail

The Code of Criminal Procedure requires the trial court to consider the defendant's ability to make bail. TEX. CODE CRIM. PROC. ANN. art. 17.15(4). Wilson's mother testified that his family did not have the resources available to post a bond for any additional amount greater than $30,000. His mother testified that she believed the prior $30,000 bond for the burglary charge could be reinstated, but at most the family could raise $3,000 for an additional $30,000 bond. She is unemployed and the family could raise only $3,000 if they sold property and pooled their money. She testified to the amount of cash and other

property that Wilson owned, a car with a value of approximately $500. Additionally, Wilson has spent more than 60 days in jail, unable to secure a bond for his release. The State did not challenge Wilson's inability to post a bond. All of these factors suggest that Wilson has made a necessary demonstration of his inability to make bail. *See Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("To show that he is unable to make bail, a defendant must show that his funds and his family's funds have been exhausted."); *see also Ex parte Dueitt*, 529 S.W.2d 531, 532–33 (Tex. Crim. App. 1975) (concluding that defendant was unable to make bail amount based on the "indications" of defendant's employer and father-in-law that the defendant and his family were unable to make bail amount).

Nevertheless, the Court of Criminal Appeals has emphasized that ability or inability to make bail does not, alone, control in determining the amount. *See Ex parte Rodriguez*, 595 S.W.2d at 550; *Ex parte Bufkin*, 553 S.W.2d at 118. The evidence of Wilson's ability to make bail of no more than $60,000, i.e. no more than $20,000 for the cocaine charge in addition to the other amounts, is a factor favoring the reduction of bail, but that factor did not require the trial court to set bail at an amount that Wilson could satisfy.

## V. Whether bail is being used as an instrument of oppression

Beyond arguing in his motion that bail was "excessive," Wilson presented no argument that bail is being used as an instrument of oppression in this case. Initially, the two motor vehicle charges were set at "no bond," while bail for the drug charge was set at $20,000. In a handwritten alteration, the motor vehicle charges were reduced to $5,000 bail each, while the possession charge was increased to $100,000. These alterations allowed Wilson the possibility to make bail when he previously would have had none. Our independent review of the record does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Wilson from posting bail.

## VI. Other factors

Other factors to be considered in determining whether bail is excessive include the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved in the offense. *See Montalvo*, 315 S.W.3d at 596. Wilson and his family reside in Harris County, and he worked in the area when released on bail. His mother testified that he had always appeared in court for the burglary charge. There also was no evidence that Wilson has been convicted of any past crimes. On the other hand, his burglary charge from 2010 was aggravated by a deadly weapon allegation, and the additional offenses that he has allegedly committed while released on bail, if

true, would violate his previous bond conditions. The State adduced some evidence to show that he committed these offenses, which the trial court could have credited in determining that Wilson was not compliant with the conditions of bail when he previously had been afforded it.

## Conclusion

In light of the foregoing analysis, we conclude that the trial court did not abuse its discretion in setting bail at $140,000 for the charges against Wilson, and specifically in setting bail at $100,000 for his possession of cocaine charge. That amount is not clearly excessive in light of the number of offenses alleged while Wilson was on bond pending resolution of other criminal charges. *See Davis v. State*, 71 S.W.3d 844, 846 (Tex. App.—Texarkana 2002, no pet.) (affirming $100,000 appeal bail amount for defendant who was arrested for possession of cocaine and marijuana and criminal trespass while released on bail, although he proved he was unable to make bail for that amount and his crimes were nonviolent); *see also Ex parte McLendon*, 356 S.W.3d 541, 543 (Tex. App.—Texarkana 2011, no pet.) (affirming $50,000 bail amount for state-jail felony of possession of less than one gram of methamphetamines as within trial court's discretion based on flight risk and defendant testing positive for amphetamines during pendency of case); *In re Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston

[14th Dist.] 2005, no pet.) (noting that the bail amount for third-degree felonies ranges up to $100,000 when aggravating factors are present).

Wilson established some factors that could justify a lower amount of bail, such as the relatively low quantity of drugs he is alleged to have possessed and his and his family's limited funds available to post a bond. However, the trial court validly could have concluded that Wilson posed a danger to the community based on the evidence suggesting that he committed more crimes while previously released on bail. Because we conclude that the trial court's ruling is within the zone of reasonable disagreement about the proper amount of bail, we will not disturb the trial court's ruling.

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).