**Opinion issued April 21, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00288-CR

———————————

## EX PARTE KEITH WILSON GOODSON, Appellant

---

### On Appeal from the 184th District Court
### Harris County, Texas
### Trial Court Case No. 1457737

---

## MEMORANDUM OPINION

This is an appeal from a bail proceeding. *See* TEX. R. APP. P. 31. Appellant Keith Wilson Goodson has been charged with the felony offense of theft over $200,000. *See* TEX. PENAL CODE ANN. §31.03(e)(7) (West Supp. 2014). Pretrial bail was initially set at $5 million, and Goodson filed an application for writ of habeas corpus seeking bail reduction. Prior to the hearing on the habeas

application, the trial court reduced bail to $750,000. Following the hearing, the court denied Goodson's application for writ of habeas corpus and bail remained at $750,000. Goodson appeals from the denial of his application for writ of habeas corpus. *See* TEX. R. APP. P. 31. We conclude that the trial court did not abuse its discretion and therefore affirm.

## Background

Goodson was charged with stealing $2,790,000 in checks from his employer and depositing them into his personal bank account. According to the State, Goodson partially admitted to the theft in a statement obtained as part of his employer's investigation and later admitted to the theft in a voluntary statement obtained by the Federal Bureau of Investigation; however, none of the money has been recovered. Bail initially was set at $5 million. Goodson filed an application for writ of habeas corpus claiming that he "has only minimal financial resources" and requesting that bail be reduced to an amount between $20,000 and $100,000. Prior to the hearing on the application, the trial court reduced bail to $750,000. Although Goodson did not testify at the hearing on his application, he presented testimony from his wife and a bail bondsman to argue that the bail amount should be reduced. In arguing that the bail amount was proper, the State provided testimony from a fraud examiner and introduced evidence demonstrating, among other things, over $117,000 in purchases from Goodson's account as well as

$526,246.48 in unaccounted cash withdrawals from January 2007 to February 2014.

Goodson first presented testimony from Woodley Fisher, a licensed bail bondsman. Fisher testified that: (1) Goodson would only qualify for a bond of about $75,000, based on the information from his wife and additional cosigners, (2) he did not believe that Goodson was a flight risk, and (3) he has never issued a $750,000 bond in Harris County. On cross-examination, Fisher testified that he was not aware of certain other bank accounts identified by the State as being held by Goodson and admitted that his opinion on the appropriate bail amount would change if Goodson has $500,000 in cash that has not been accounted for in any of the records provided to Fisher.

Goodson then presented testimony from his wife, Misti, who testified that she does not believe her husband is a flight risk because: (1) he has lived in Houston his entire life, (2) he is actively involved with his three children, and (3) he is currently employed and is the sole source of his family's income. She further testified that Goodson could not post bail at $750,000, but could post a bond, with help from family members, if the amount was reduced to $75,000. On cross-examination, Misti testified that she does not know what happened to the $526,246.48 in cash withdrawals and did not know about specified large purchases from the account. She further testified on cross-examination that: (1) Goodson

handled the family's finances while she took care of the household, (2) they currently have three cars, an ATV, a recreational vehicle, and a house appraised at $230,000, (3) they added a pool and installed hardwood floors to their home, (4) over the years, they have sold their boat, motorcycles, jet skis, 4-wheelers, and a second house, and (5) they have traveled outside of the country.

The State presented testimony from Brian Quijano, a fraud examiner with the Harris County District Attorney's Office, who reviewed records from Goodson's bank account. Quijano prepared exhibits that were introduced into evidence identifying $2,250,886.40 in unauthorized checks deposited by Goodson into his account from January 2007 to February 2014 and $526,246.48 in cash withdrawals during the same time period. Quijano testified that people who steal large amounts of money sometimes store cash, and there is no way to determine with certainty whether such defendants have a large amount stored away. In reviewing Goodson's account, Quijano found evidence of potential other unidentified accounts. On this point, the State introduced evidence of wire transfers from Goodson's account to other accounts with different financial institutions, including one which indicated purpose of the transfer was "[s]ending to self." On cross-examination, Quijano admitted that these accounts could be either bank accounts or loans. Finally, the State introduced into evidence a list of purchases from Goodson's account for certain "large items." Quijano testified that he was

4

able to verify these purchases in the Goodson's account records and that the purchases totaled over $117,000, suggesting assets of that amount.

At the conclusion of the hearing, the court denied the writ of habeas corpus and held that the bail remained at $750,000. Goodson filed a timely notice of appeal.

**Analysis**

An applicant seeking a writ of habeas corpus bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703–04 (Tex. Crim. App. 1993). In reviewing the trial court's order, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

Both the federal and state constitutions prohibit excessive bail. The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *see also id.*, amend. XIV; *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S. Ct. 479, 484 (1971) (applying Eighth Amendment prohibition of excessive bail to the States). Likewise, the Bill of Rights contained within the Texas Constitution provides that "[a]ll prisoners shall be bailable by

sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." TEX. CONST. art. I, § 11. The Texas Bill of Rights further specifies that "Excessive bail shall not be required . . . ." *Id*., art. I, § 13.

The primary purpose for setting bail is to secure the presence of the defendant in court at his trial. *See Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *See Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); *Montalvo v. State*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When reviewing a trial court's determination regarding the amount of bail set, appellate courts apply an abuse-of-discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo*, 315 S.W.3d at 592; *Cooley v. State*, 232 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In the exercise of its discretion, a trial court should consider the following factors set forth in

6

Article 17.15 of the Texas Code of Criminal Procedure in setting a defendant's bail before trial:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West Supp. 2014); *see Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991); *Montalvo*, 315 S.W.3d at 592. In addition to these factors, courts should also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions, and aggravating factors involved in the offense. *See Ex parte Rubac*, 611 S.W.2d at 849–50; *Montalvo*, 315 S.W.3d at 596.

A defendant carries the burden of proof to establish that bail is excessive. *See Ex parte Rubac*, 611 S.W.2d at 849; *In re Hulin*, 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.). In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is within the zone of reasonable disagreement. *See Cooley*, 232 S.W.3d at 234; *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd)

(citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)). An abuse-of-discretion review in this context requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *See Cooley*, 232 S.W.3d at 234. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *See id*.

## I. Nature and circumstances of the offense

The defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *See Ex parte Hunt,* 138 S.W.3d 503, 506 (Tex. App.— Fort Worth 2004, pet. ref'd); *see also Montalvo*, 315 S.W.3d at 593 (noting that consideration of nature and circumstances of offense requires us to consider range of punishment permitted in event of conviction). When the nature of the offense is serious and a lengthy sentence following trial is probable, bail should be "set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear." *In re Hulin*, 31 S.W.3d at 761; *see also Hunt*, 138 S.W.3d at 506 ("Given the serious nature of the offenses and the potential for a lengthy sentence, the trial court could properly have concluded that the amounts of the bonds were reasonable.").

Goodson is charged with theft of over $200,000, which is a first-degree felony offense carrying a punishment range of five to ninety-nine years or life

imprisonment, plus a fine of up to $10,000. *See* TEX. PENAL CODE ANN. § 12.32 (first degree felony is punishable by imprisonment for five years to ninety-nine years, or life, and a fine not to exceed $10,000); *id.* § 31.03(e)(7) (theft is first-degree felony if value of property stolen is $200,000 or more).

The $750,000 bail amount set in this case is within the range of bail amounts that have been upheld for other first-degree felonies. *See*, *e.g.*, *O'Brien v. State*, No. 01–12–00176–CR, 2012 WL 2922545, at *1–5 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (mem. op., not designated for publication) (no abuse of discretion in refusal to reduce bail set at $750,000 for first-degree felony charge of theft of property valued at over $200,000); *Ex parte Cuevas*, *Jr.*, No. 11–03–00402–CR, 2004 WL 527960, at *4–5 (Tex. App.—Eastland Mar.18, 2004, no pet.) (mem. op., not designated for publication) (approving bail set at $1,000,000 in case involving offense of engaging in organized criminal activity to commit theft of farm equipment worth over $150,000); *Ex parte Waddell*, No. 14–02–01237–CR, 2003 WL 21403545, *1–3 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.) (mem. op., not designated for publication) (holding pretrial bail of $1,600,000 was not excessive where appellant was charged with engaging in organized crime involving theft of automobiles worth approximately $788,000, could be sentenced to between five to ninety-nine years in prison, and presented evidence that he could only raise a bond of $50,000); *see also Tran v. State*, No.

01–06–00035–CR, 2006 WL 1771815, at *1–5 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op., not designated for publication) (upholding bail set at $800,000 for cocaine possession and $500,000 for marijuana possession); *Maldonado v. State*, 999 S.W.2d 91, 95-96 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (upholding $2.5 million bond where police recovered 721 kilos of cocaine).

## II. Sufficiency of bail and whether bail is being used as an instrument of oppression

Because Goodson is complaining that the bail amount of $750,000 is excessive, and the State asked the trial court continue to set bail at that amount, there is no dispute that the bail set by the trial court is sufficiently high to give reasonable assurance that Goodson would appear in court as required in the future. *See Montalvo*, 315 S.W.3d at 593; *see also Wilson v. State*, No. 01-13-00048, 2013 WL 655263, at *4 (Tex. App.—Houston [1st Dist. Feb. 21, 2013, no pet.) (mem. op., not designated for publication). Beyond arguing that the bail was "excessive," Goodson presented no argument that bail was being used as an instrument of oppression in this case and nothing in the record suggests that the trial court set bail at an excessively high level solely to prevent Goodson from posting bail. *See Montalvo*, 315 S.W.3d at 596 ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail.").

## III. Ability to make bail

Although the ability to make bail is one of the factors to be considered, it is not controlling and will not alone render the bail amount excessive. *See Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("[T]he ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent."); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (citing *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980)). "To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Goodson did not testify at the hearing and his application for writ of habeas corpus presented no documentary evidence of his assets and financial resources. *See Ex parte Castillo-Lorente*, 420 S.W.3d 884, 889 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The testimony from Fisher regarding the largest bond amount that he believed Goodson could obtain was insufficient to demonstrate an inability to post bail. *See Ex parte Ruiz*, 129 S.W.3d 751, 754 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (bail bondsman's testimony of "largest bond" defendant could make did not carry burden to establish inability to make bail); *Ex parte Castillo-Lorente*, 420 S.W.3d at 889 (testimony that appellant's family and friends spoke with bail bondsman and learned largest amount they could post was insufficient to

11

carry burden of demonstrating inability to make bail). Although Fisher indicated that Goodson had multiple persons willing to co-sign his bond, no information was provided regarding the extent of the financial assistance that they could provide. The testimony of Misti Goodson focused on whether she believed Goodson to be a flight risk and similarly provided few details regarding either Goodson's finances.

In contrast to the dearth of evidence presented by Goodson regarding his finances, the State offered evidence suggesting significant assets in the form of vehicles and property, funds received from prior sales of various assets, and over $500,000 in unaccounted cash withdrawals. Because Goodson offered little evidence supporting his claimed inability to make bail, the trial court properly could have concluded that the amount of bail was reasonable under the circumstances. *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (in affirming trial court's refusal to lower bond, court cited as a factor absence of evidence regarding defendant's ability to make bond when defendant's evidence consisted of his testimony that he and his family lacked sufficient assets or financial resources to post the bond, but did not detail either his or his family's specific assets and financial resources nor efforts to furnish bond); *Balawajder v. State*, 759 S.W.2d 504, 506 (Tex. App.—Fort Worth 1988, pet. ref'd) (noting that vague references to inability to make bond do not justify a reduction in the amount set).

**IV.     Future safety of complainants and the community**

Neither Goodson nor the State addressed the future safety of the complainants and the community, and no evidence was presented at the hearing regarding the issue. However, when questioned by the trial court regarding whether Goodson had a criminal record, the State mentioned that Goodson had a previous deferred adjudication for the felony offense of injury to a child that he successfully completed.

**V.     Other factors**

In addition to the considerations enumerated in the Code of Criminal Procedure, courts also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions, and aggravating factors involved in the offense. *See Ex parte Rubac*, 611 S.W.2d at 849–50. Evidence was presented that Goodson has resided in Houston his entire life, is currently employed, has three children with whom he is actively involved, and voluntarily surrendered to authorities. Although these factors weigh in favor of bail reduction, they are offset by the other factors and we cannot conclude that the trial court abused its discretion.

This Court has also considered the Harris County District Court Bail Schedule as a factor in reviewing the amount of bail for various offenses. *See*, *e.g.*, *Ex parte Bogia*, 56 S.W.3d 835, 838 (Tex. App.—Houston [1st Dist.] 2001, no

13

pet.). The bail schedule is not binding on district courts either inside or outside of Harris County. *See Ex parte Sabur–Smith*, 73 S.W.3d 436, 441 n.5 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Still, the bail schedule provides some indication of the propriety of bail for various types of offenses, just as case law arising from other counties provides some evidence that the bail set is reasonable. *See id*.

Goodson argues that the $750,000 bail set in his case is excessive because the Harris County District Court Bail Schedule sets bail at $30,000 for defendants charged with a first-degree felony with one previous felony, and his bail was set at 25 times that amount. *See* District Court Bail Schedule, Harris County Administrative Offices of the District Courts (effective Jan. 1, 2007), http://www.justex.net/BailBondSchedule.aspx. However, as Goodson acknowledges, the bail schedule also provides for bail to be set at twice the amount stolen in theft cases involving large amounts of property. Goodson relies on our opinion in *Bogia* to argue that this Court has held such an amount to be "unreasonable in light of similar factors considered." In *Bogia*, we found the schedule's formula setting bail at double the amount stolen in a high-value theft case to be unreasonable, but also provided that the bail amount could be justified based on the extraordinary circumstances of the case rather than the formula set forth in the schedule. *See Ex parte Bogia*, 56 S.W.3d at 838-39 ("If a $360,000 bail can be justified here, it will not be because of any formula. On the contrary, it

would have to be justified by extraordinary facts in this particular case."). Here, the trial court departed from the bail schedule by setting bail at an amount significantly lower than that scheduled for a high-value theft case (bail was set at approximately 27% of the $2,790,000 in checks alleged to have been stolen by Goodson rather than 200% of the amount). As discussed above, given the specific circumstances of this case, we cannot say that setting bail at $750,000 was unreasonable.

## Conclusion

Based on the evidence before the trial court in this case and in light of the foregoing analysis, we conclude that the trial court did not abuse its discretion in refusing to reduce bail below $750,000. Accordingly, we affirm the trial court's denial of the application for writ of habeas corpus.

## PER CURIAM

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).