**Ex parte Khalid SABUR–SMITH, Appellant.**

**No. 01–02–00051–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 14, 2002.

---

Stephen A. Gustitis, College Station, for appellant.

Bill R. Turner, District Attorney, Douglas Howell, III, Assistant District Attorney, Bryan, for state.

Panel consists of Justices COHEN, WILSON, and NUCHIA.

## OPINION

PER CURIAM.

Appellant is charged with sexual assault, a second-degree felony. He appeals the denial of his pretrial application for habeas corpus requesting bail reduction. The trial court refused to lower the $150,000 bail. We reverse the trial court's order denying habeas corpus relief, we grant relief, and we set bail at $30,000.

### Factual Background

At his December 11, 2001 hearing, appellant testified that he was 22-years old. For the last three years he has been living with his mother in her Bryan–College Station home. His ties to the community include his fiancé, nine uncles, three aunts (present in the courtroom) and 27 cousins. He grew up in San Antonio, where he completed the 12th grade, but did not graduate from high school. Following high school, he completed further education in the culinary arts in the Job Corps. He worked continuously, full time,

without missing a day of work, at Sanderson Farms for nearly three years. He worked his way up to become a vaccinator. The Sanderson Farms job ended February 5, 2001. Appellant then drove trucks for Ray Ice for a little while before going to work for Burton Creek Barbecue as a meatcutter and cook, a job he held for about three months before being arrested. About two weeks before his arrest, he started working for Decision One, providing technical support for Motorola. When the court asked appellant how he was able to get a job in a computer-related field, appellant responded that he told Motorola he had no experience, but he was willing to learn anything. If released on bond, the Motorola and Burton Creek Barbecue jobs would still be available to him.

The resources available to him included: (1) a paid-for 1990 Buick Skylark worth about $1,500, (2) a 2001 Eclipse with a lien against it, and (3) personal property worth about $1,175. He had no savings, real estate, or cash. His mother had about $2,000 cash. He could have cash if he was working.

On cross-examination, appellant acknowledged that he had received a criminal trespass warning in July of 1999, that he was questioned as a suspect in a sexual assault case in Bryan in March of 2000, and that he received a criminal trespass warning from the manager of Academic Village Apartments in March 2001. The prosecutor acknowledged that appellant was never arrested for any crimes arising from these incidents.

According to the probable cause statement of detective S.H. French, the complainant told him at 5:25 p.m. on May 7, 2001, that a person she knew as Deon had sex with her without her consent at about 8:00 a.m. the same day. The complainant reported that Deon had come to the back door of her house and offered to give her drugs in exchange for sex. When she declined, he pushed her into her house through the back door. Complainant said that Deon grabbed her by the neck and forced her to perform oral sex on him, causing her to gag. Deon then pulled her pants down and had intercourse with her against her will. She told French she had waited to report the offense because she was afraid and did not know what to do. At French's request, complainant went to the hospital for a medical examination and analysis using a sexual assault kit.

Two days later, upon receiving Deon's address from complainant, officers Beason and Davis talked to him and identified him as Khalid Asu Sabur–Smith, appellant. Appellant acknowledged he was also known as Deon. Appellant told officer Beason that the complainant wanted to have sex with him, but then declined. Sabur–Smith said complainant then performed oral sex on him and masturbated him to ejaculation. She wanted drugs in exchange for sexual favors. This occurred by her washing machine, which is located inside her house close to the back door. He denied having had vaginal sex with her.

On September 18, 2001, detective French received a report from a Department of Public Safety (DPS) criminalist that, from complainant's vaginal swab, she had identified the profile of complainant and two unknown individuals.

On October 15, 2001, five months after the alleged offense, French interviewed appellant at the Bryan Police Department, where he again stated that he did not have vaginal sex with complainant. He stated that complainant performed oral sex on him and that he ejaculated in the backyard grass outside complainant's house. French requested that appellant give a DNA sample, and appellant voluntarily did so. Appellant then stated, inconsistently with his prior statements, that he ejaculat-

ed on complainant's face and that she might have taken that semen and put it in her vagina. He did not mention complainant masturbating him.

On November 8, 2001, French received a report from the DPS that appellant's DNA matched DNA from complainant's vaginal swab. On November 21, 2001, appellant was arrested and jailed in lieu of $150,000 bail set by a magistrate.

In closing, appellant's counsel asked the court reduce bail to between $30,000 and $50,000. The court denied relief.

Appellant contends that a bail of $150,000 is excessive.

■ There is no precise standard for reviewing bond settings on appeal. *Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex.Crim.App.1979). We are guided by article 17.15, which provides:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> (1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> (2) The power to require bail is not to be so used as to make it an instrument of oppression.
>
> (3) The nature of the offense and the circumstances under which it was committed are to be considered.
>
> (4) The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> (5) The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon Supp.2001).

■ The right to a reasonable bond is based on the presumption of innocence and is protected by the United States and Texas constitutions. *Ex parte Goosby*, 685 S.W.2d 440, 441 (Tex.App.-Houston [1st Dist.] 1985, no pet.) "[I]t is the defendant's burden to prove that the bail is excessive and he must usually show that he made an unsuccessful effort to furnish bail in the amount fixed." *Ex parte Willman*, 695 S.W.2d 752, 754 (Tex.App.-Houston [1st Dist.] 1985, no pet.).

## A. Nature of the Offense and the Circumstances of Commission

■ The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim.App.1981). Here the offense charged is sexual assault, a second-degree felony,[1] which carries a penalty of imprisonment from 2 to 20 years and a fine up to $10,000.[2] The record contains no evidence that appellant has ever been convicted of anything. Thus, it appears appellant is eligible for probation.

In *Balawajder v. State*, 759 S.W.2d 504 (Tex.App.-Fort Worth 1988, no pet.), the defendant, who had been jailed in three states and had at least one felony conviction, was charged with both aggravated robbery and *aggravated* rape. *Id.* at 505. The court held that a bail of $50,000 was not per se oppressive. *Id.* at 506. In the instant case, there is one, not two charges as in *Balawajder;* there is no evidence appellant had been previously convicted; and the sexual assault charge is a second-

---

1. TEX. PEN.CODE ANN. § 22.011(a)(1)(A), (B), (f) (Vernon 1994).

2. TEX. PEN.CODE ANN. § 12.33 (Vernon 1994).

degree felony, not a first-degree felony as in *Balawajder*.

In *Ex parte Ruiz*, 692 S.W.2d 192 (Tex. App.-Austin 1985, no pet.), the defendant was charged with six felonies, including the first-degree felony of aggravated sexual abuse.[3] *Id.* at 193. Bail was set at $100,000 on that charge. *Id.* After noting that the trial court heard evidence that, while armed, the defendant robbed four people and sexually assaulted one of them, that he was a habitual offender facing a sentence on each indictment of 25 years to life, that he had spent "virtually his entire adult life in prison for various robberies," and that, when released on parole, he left the state without the knowledge or permission of parole authorities, the court of appeals lowered the bail on this charge to $70,000. *Id.* at 194. In the instant case, the charged offense is a second-degree felony, and there was no evidence that appellant was armed, that he had prior arrests or convictions, or that he fled.

The strength of the evidence of the crime presented at the habeas hearing has been considered in determining the propriety of bail. *See Ex parte Parish*, 598 S.W.2d 872, 873 (Tex.Crim.App.1980). Here, the State presented evidence of appellant's guilt in the form of detective French's affidavit, repeating the victim's allegations to him, as well as appellant's inconsistent statements, five months apart, regarding the facts of the incident. The affidavit also contained evidence that would relieve appellant of criminal responsibility, i.e., that the complainant consented to the sex acts.

**3.** TEX. PEN.CODE ANN. § 20.04(a)(4), (b) (Vernon Supp.2002).

**4.** A defendant detained in jail for a felony accusation must be released on personal bond or by reducing the amount of bail required, if the State is not ready for trial within 90 days

**B. Sufficiency of Bail Amount to Assure Court Appearance**

The $150,000 bail amount clearly exceeds the total value of the financial resources available to appellant.

**C. Appellant's Ability to Make Bail**

██ The accused's ability or inability to make bond is relevant, but not controlling. *Ex parte Bogia*, 56 S.W.3d 835, 837 (Tex. App.-Houston [1st Dist.] 2001, no pet.). The defendant must *"usually* show that he made an unsuccessful attempt to furnish bail in the amount fixed." *Id.* (citing *Willman* (emphasis added)). We take judicial notice that in order to obtain a bond of this size, a defendant must usually pay the bondsman at least 10 percent of the bail amount, and, in addition, furnish substantial collateral, often in an amount equal to or exceeding the amount of bail. Here, appellant has remained in jail more than 110 days without making bail.[4] We hold appellant established he did not have access to $15,000 to pay a bond premium, or possess $150,000 of assets to serve as security for a bond in that amount.

**D. Future Safety of Victim and the Community**

There was no evidence that, if released on bond, under conditions that might be imposed thereon, appellant would pose a continuing threat to the complainant. With respect to safety of the community, there was evidence that appellant had been questioned as a suspect in another sexual assault case, but there was no evidence that he was arrested for that offense or that he had committed it. As stated

of the commencement of his detention. *See* TEX.CODE CRIM. PROC. ANN. art. 17.151, § 1(1) (Vernon Supp.2002). No evidence shows, nor does appellant contend, that the State was not ready for trial within 90 days.

above, no evidence showed appellant had ever been convicted of any crime or even been arrested, except for this case.

### E. Flight Risk Considerations

Considerations such as family ties, residency, work history, prior criminal record, and adherence to prior bonds are all designed to gauge a defendant's flight risk potential. Here, appellant had lived in the community for three years, had extensive family ties to the area, and had a work record that included continuous employment and efforts to advance within fields in which he was trained and also one in which he was not trained. Further, although appellant knew he was under investigation regarding this charge since May 2001, he remained in the community until the time of his arrest on November 21, 2001, and during that period, he voluntarily furnished a DNA sample and twice submitted to interviews with law officers.

### Conclusion

Giving appellant the presumption of innocence to which he is entitled under the United States and Texas constitutions, considering the amount of bail considered reasonable for other felony sexual offenses,[5] the evidence of the offense, the resources available to appellant to make bail, the length of appellant's confinement without trial, the lack of evidence of other crimes, arrests, or convictions, and the appellant's community ties and work record, we conclude appellant has established that bail of $150,000 is excessive.

---

**5.** This Court, in a Harris County case, has considered the Harris County District Court Bail Schedule as a factor in reviewing the amount of the bail for various offenses. *See Ex parte Bogia,* 56 S.W.3d 835, 838 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The Harris County District Court Bail Schedule is not binding on district courts outside Harris County, nor on district courts in Harris Coun-

We reverse the trial court's order denying habeas corpus relief. We grant relief and render judgment that appellant's bail be reduced to $30,000.

ty. Still, it is some indication of the propriety of bail for various types of offenses, just as case law arising from other counties is. The standard bail in the Harris County District Court Bail Schedule for a "3g" offense, such as sexual assault, is $30,000. *Id.* at 841; *see* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g(1)(H) (Vernon Supp.2002) (classifying sexual assault).