**Affirmed and Memorandum Opinion filed February 12, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-12-00505-CR

## EX PARTE JIMMY CHARLES HOLLOWAY

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause No. 1345314**

## M E M O R A N D U M   O P I N I O N

Appellant Jimmy Charles Holloway has been charged with theft of over $200,000, allegedly committed over several years. Appellant is alleged to have stolen $2,485,449 from his employer. The trial court set his pre-trial bond at $1,000,000. Appellant filed an application for writ of habeas corpus seeking a reduction in bond. *See* Tex. Code Crim. Proc. art. 11.24. After a hearing, the trial court denied relief, and appellant brought this appeal.[1] *See* Tex. R. App. P. 31.

---

[1] Because this is an appeal from the denial of relief on an application for writ of habeas corpus, the Texas Court of Criminal Appeals has instructed us that the proper style is "Ex parte Holloway." *See Ex parte Anderer,* 61 S.W.3d 398, 399 n. 1 (Tex. Crim. App. 2001).

Appellant was employed for over twenty-five years as the bookkeeper at a family business, Coastal Agricultural Supply. At the bail hearing, an FBI investigator, Special Agent Eric Norman, testified that he was assigned in early 2011 to investigate embezzlement at the company and discovered that appellant had filed an assumed name certificate for "Coastal Agricultural Limestone Supply" in June 2000. He also discovered that appellant had opened a bank account in that name.

Special Agent Norman obtained appellant's bank statements and discovered deposits in appellant's account totaling $2,485,449.11 from January 2004 through January 2011, of checks made out to variations on the name "Coastal," "Coastal Ag," "Coastal Agricultural," and "Coastal Supply."[2] Norman learned from the companies that had written the checks that those checks were not intended for appellant, but were for his employer.

Evidence at the hearing revealed that after the theft was discovered, appellant moved his personal belongings to six storage units that were not leased under his name. In addition, appellant refused to disclose his whereabouts to Norman when he attempted to execute an arrest warrant. After appellant was arrested at his daughter's home, various travel documents were discovered indicating he intended to travel abroad and he was planning to exchange foreign currency. At the conclusion of the writ hearing, the trial court stated: "Given the nature of the offense, the evidence that the defendant is likely to flee the jurisdiction and that [he] has hidden assets from the tribunal in the civil case, I will deny relief on the writ." This appeal followed.

In reviewing a trial court's decision to deny relief on a writ of habeas corpus seeking a bond reduction, we review the facts in the light most favorable to the

---

[2] The bank did not maintain records prior to 2004.

trial court's ruling and will uphold it absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *see also Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981). We afford almost total deference to a trial court's factual findings, especially when those findings are based upon credibility and demeanor. *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004). On habeas review, we will not disturb the trial court's ruling as long as it is "at least within the zone of reasonable disagreement." *See Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

> Courts are to consider the following statutory factors in setting bail:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that a criminal defendant will appear at trial and comply with other court orders and conditions of the bond.
>
> 2. The power to require bail is not to be used as an instrument of oppression.
>
> 3. The nature of the offense and the circumstances of its commission.
>
> 4. The ability to make bail is to be regarded, and proof may be taken on this point.
>
> 5. The future safety of a victim of the alleged offense and the community.

Tex. Code Crim. Proc. art. 17.15; *Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991). Courts should also consider the defendant's work record, family ties, length of residency, past criminal record, conformity with previous bond conditions, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 849–50; *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

In his sole issue on appeal, appellant complains that the trial court abused its discretion by denying habeas relief. He contends that the bail set is unreasonable, and the trial court should have reduced it because appellant has strong ties to the community, no criminal record, will appear for trial, and is not a danger to the

community.

The primary purpose for setting bond is to secure the presence of the defendant at his trial. *Ex parte Vasquez*, 558 S. W.2d 477, 479 (Tex. Crim. App. 1977). In a pre-trial writ seeking a bail reduction, the burden is on the defendant seeking the reduction to demonstrate that bail is excessive. *Rubac*, 611 S.W.2d at 849; *Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Thus, appellant had the burden to establish that the bail set by the trial court is excessive and unnecessary to secure his presence at trial.

To meet this burden, appellant called only one witness at the writ hearing, his daughter, Beverly Castro. She testified that appellant has lived in Harris County since 1998, and both of his adult children live in Houston. Appellant has no other immediate family. Castro testified that she would provide a room for appellant if he is released on bail. She also testified that appellant has health concerns, including liver and prostate issues. She stated that the civil suit against her father was settled recently, and as part of the settlement, appellant turned over his retirement account, all of his real property, and all personal property except for a few family heirlooms. Castro testified that the family could raise only $2,000 to $3,000 to contribute to appellant's bail. Castro testified that federal agents came to her house on August 10, 2011, with an arrest warrant for her father. She called appellant, and he then came to her house and turned himself in. She was not aware, however, that the FBI had contacted appellant by phone that morning and he refused to tell the agent where he was.

Appellant did not provide any documentary evidence of his finances. Castro testified that she does not have access to appellant's financial information. Other evidence showed that appellant had hidden his financial dealings from his daughter for at least five years when the thefts occurred. In addition, there was evidence that appellant had hidden assets from the court in the related civil case. Castro also

4

admitted that she and her husband helped appellant move personal property from his house into several storage units around the time that the related civil suit was filed. She acknowledged that the storage units were not leased in her father's name. The State provided testimony from one of the family members of appellant's employer that only a small percentage of the stolen money had been recovered from appellant as a result of the civil lawsuit. Evidence introduced at the writ hearing indicates that appellant may have assets in foreign banks. The State admitted one of appellant's bank statements showing a wire transfer from a bank in the Netherlands. Based on this evidence, the trial court may have reasonably doubted the testimony that appellant lacked the ability to post bond.

The State presented evidence that appellant had not cooperated fully with law enforcement authorities. Not only had evidence indicated that he attempted to avoid arrest, there was testimony that appellant called a friend from jail and asked him to retrieve a package hidden under the carpet at his former residence that had not been discovered when authorities searched the house. Appellant did not inform authorities about the property in the storage units. In addition, there was evidence that appellant had both friends and financial dealings in foreign countries. Castro acknowledged that appellant travelled overseas regularly and that he had a number of friends in foreign countries. Even though the State did not have the burden of proof, it provided some evidence that appellant may be a flight risk and may have hidden assets overseas.

The defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet ref'd); *see also Montalvo v. State,* 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting that consideration of nature and circumstances of offense requires us to consider range of punishment in event of conviction). If convicted, appellant is subject to a sentence of five to ninety-nine

years or life. *See* Tex. Penal Code § 12.32. When the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, bail must be set sufficiently high to secure the defendant's presence at trial. *See Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Because of the seriousness of this offense and the lengthy potential sentence, appellant may have a strong incentive to flee the jurisdiction, and a high bail amount is reasonable.

To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted. *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Appellant has not made that showing. There is almost no evidence in the record regarding appellant's assets and financial resources. *See, e.g., Ex parte Ruiz,* 129 S.W.3d 751, 754 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (lack of evidence of appellant's personal financial resources was factor considered by court of appeals in affirming trial court's decision not to lower bail). Because appellant has offered very little evidence supporting his claimed inability to make bail and no evidence regarding his efforts to secure bond, the trial court could properly have concluded that the amount of bail was reasonable under the circumstances. *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.).

Courts often compare bond amounts in analogous cases to determine whether the amount set in the current case is excessive. This court previously has affirmed a trial court's imposition of much higher bail in a case in which the defendant was charged with participating in the theft of automobiles worth far less than what appellant is alleged to have stolen in this case. *See Ex parte Waddell*, No. 14-02-01237-CR, 2003 WL 21403545, *1 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.) (mem. op., not designated for publication) (holding pretrial bail of $1,600,000 was not excessive where the defendant was charged with theft

of automobiles worth approximately $788,000, had attempted to raise money to flee the country, refused to surrender his passport, and faced a potential sentence of between five to ninety-nine years in prison). Other cases reveal that the bond set in this case is not outside the bounds of reasonable disagreement. *See, e.g., O'Brien v. State*, No. 01-12-00176-CR, 2012 WL 2922545, *5 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (mem. op., not designated for publication) (finding no abuse of discretion in refusing to further reduce bail originally set at $12,000,000 to below the $750,000 reduced bond on charge of participating with two others in committing theft of items worth $6,000,000); *Pharris v. State*, No. 14-06-00788-CR, 2006 WL 3313323 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (mem. op., not designated for publication) (affirming denial of request to further reduce $500,000 reduced bail on first-degree theft charge); *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 WL 527960 (Tex. App.—Eastland 2004, no pet.) (mem. op., not designated for publication) (affirming refusal to lower bail set at $1,000,000 for engaging in organized criminal activity to commit theft).

In Harris County, the district courts follow a schedule in setting pre-trial bail amounts.[3] Generally, when a theft is for a large sum or large amount of property, the court will set bail at twice the value of the stolen property or money. This court has considered the Harris County District Court Bail Schedule as a factor in reviewing the amount of the bail for various offenses. *See, e.g., Ex parte Waddell*, 2003 WL 21403545, at *4. The bail schedule is some indication of the propriety of bail for various types of offenses, just as case law arising from other counties is some evidence that the bail set is reasonable. *Ex parte Sabur-Smith*, 73 S.W.3d 436, 441 n.5 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, appellant's bail is far less than the scheduled amount.

Appellant cites *Ex parte Keller*, 595 S.W.2d 531 (Tex. Crim. App. 1980) as

---

[3] *See* District Court Bail Schedule at http://www.justex.net/BailBondSchedule.aspx.

authority that his bail should be reduced. In that case, two defendants were each charged with three separate offenses of theft by receiving stolen property allegedly valued at over $1,000,000. Over thirty years ago, the Court of Criminal Appeals ordered the bail set at $200,000 and $100,000 per case reduced to $10,000 per case, or $30,000 per defendant, after finding that the defendants had met their burden of proof. *Id.* at 533. The evidence in that case was far different than presented here, however. Shirley Ann Keller provided evidence that she had two teenage daughters who were living by themselves while she was in jail. *Id*. at 532-33. Both defendants testified at the writ hearing that they would appear in court at any time they were required to. Several family members also testified on behalf of each defendant, making assurances that the defendants would appear in court and that they would indemnify the defendants' bonds. *Id.* at 532. The court considered evidence that Keller had successfully served a five-year probated sentence without any suggestion of failing to report. *Id.* at 533.The court found this evidence important to its decision and "entitled to weight as regards the likelihood of her reporting to court as required." *Id.*

Appellant also cites a more recent case from our sister court in which bail was ordered reduced. *See Ex parte Bogia*, 56 S.W.3d 835 (Tex. App.—Houston [1st Dist.] 2001, no pet.). In *Bogia,* the trial court had apparently followed the Harris County District Court Bail Schedule in setting bail at $360,000, twice the value of the stolen funds. *Id.* at 835. An important distinguishing factor in that case is that Sylvia Bogia was charged with second degree theft with a punishment range of two to twenty years. *See id.* at 838. The First Court of Appeals considered the nature of appellant's offense and opined that a jury might likely find her far less culpable than her husband in their scheme to perform contract work for his employer. *Id.* at 839. The court ordered bail reduced to $10,000, the amount shown on the bail schedule for first-time offenders charged with a second degree felony.

8

*Id.* at 840. Based on the nature and circumstances of the crimes in each case, we find that *Bogia* is inapposite.

We hold that appellant has not met his burden of proof to show that the bail amount set by the trial court is excessive. Therefore, we overrule appellant's sole issue. The trial court's order denying habeas relief is affirmed.


PER CURIAM


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).