

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-0032-CR

EX PARTE RAKAN SHAHWAN

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-00061-367

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Rakan Shahwan appeals the trial court's order denying his pretrial application for writ of habeas corpus seeking pretrial bond reduction. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background**

Appellant was arrested on December 25, 2013, on five counts of second-degree felony aggravated assault with a deadly weapon, and one count of Class B misdemeanor possession of marihuana, all of which arose out of a motor vehicle collision on that date. Bond for each aggravated assault was set at $5,000 and for the marihuana possession was set at $500. Shortly after Appellant was released on a $25,500 bond, the sheriff's department filed a probable cause affidavit and obtained a warrant for which Appellant was arrested on a charge of third-degree felony obstruction or retaliation, alleged to have arisen out of the same collision. The bond for this charge was set at $500,000.

Through counsel, Appellant filed a pretrial application for writ of habeas corpus seeking a reduction of the bond and contending that in light of his financial resources the $500,000 bond is excessive and oppressive in that it far exceeds that necessary to ensure his appearance at trial, resulting in illegal confinement and restraint under the code of criminal procedure and the state and federal constitutions. After a hearing, the trial court denied relief.

**Evidence at Hearing**

At the hearing on the writ, Cason Cagle testified for Appellant that he owns and manages several bonding companies in Denton and Collin Counties and is the current surety on Appellant's original $25,500 bond. Cagle has not met Appellant personally but, from "purely an analytical" standpoint, he opined that Appellant would not be a flight risk; otherwise, he testified he would not have

2

already put up the $25,500 bond. Cagle further testified that he would have no problem, if provided with the necessary information and collateral, in securing any bond for Appellant.

On cross-examination, Cagle testified that he has seen bonds in other retaliation cases ranging between $10,000 and $50,000. With the information on Appellant's financial resources and those of the people willing to post bond for him, he believes that Appellant's family was willing to collateralize the surety bond. For a substantial size bond, Cagle would require a deed of trust on real property so that if Appellant were to flee, Cagle would be secured against the full loss.

Yara Batista testified that she has been a friend of Appellant for about five years and had dated him in the past. Appellant has lived in the Carrollton-Lewisville area for the five years she has known him. She also testified that his mother, siblings, and most of his friends all reside in the same area. Appellant worked in the warehouse at Best Buy since she has known him, and he lived in a house belonging to his mother, but Batista and Appellant had never discussed his finances. She believed that if released, Appellant would follow conditions set by the court, including wearing an electronic monitor, submitting to random drug testing, and staying away from a specific individual.

Sandra Shahwan testified that she is Appellant's mother and has degrees in English and elementary education. She is no longer married to Appellant's father, who was a pilot for Royal Jordanian Airlines. She taught school in Jordan

3

for almost fifteen years before moving back to the United States in 1992. Appellant was born in Jordan and is the youngest of her five children, who range in age from thirty to forty-seven years old. Appellant moved with his mother back to the United States in 1992, when he was eight-and-a-half years old, and has been an American citizen since he was seventeen. Sandra Shahwan has lived in the Carollton area most of the twenty-two years since returning to the United States, and Appellant lived with her until May 2012.

Appellant's mother described his work history. He started working after school at Arby's at age fourteen and then took a job at Braum's. He became an assistant manager at Whataburger at age sixteen. She testified he has always had a job and gone to school most of the time he lived with her. He has eighteen hours left for a radiology tech degree, but he took off the spring semester. As is typical with young people, she said, Appellant does not have a high-paying job and is paying back student loans. He has $1,800 in his bank account and put up the money for his original surety bond.

On cross-examination, Shahwan testified that Appellant has a Jordanian passport. She thought that his father had the passport in Jordan, but Appellant's counsel informed the court that counsel now has it, along with Appellant's United States passport, in counsel's possession.

Shahwan further testified that Appellant's father is his only relative currently residing in Jordan and that he has no relationship with his father. The

4

last time Appellant visited his father was in 2001 or 2002, and the father never sees Appellant when he comes to the United States.

Appellant is thirty years old and his brother Lawrence, who lives in Lewisville, is thirty-six. Shahwan acknowledged that Appellant had been working for Lawrence for the previous three years, but on the date of the charged offense, she said, Appellant was not employed. He had stopped working for his brother the month before. Appellant had been doing sales work in some of Lawrence's stores, and had worked in his gas stations and at his tile and flooring store. Lawrence had owned three gas stations, but sold two of them and still owns the third one, which is in Jordan. The tile and flooring store is in Irving, she believed, although she had never seen it. Lawrence also owned two small car dealerships with another man in Dallas.

Shahwan testified that Appellant would not have a problem complying with any conditions the court would impose on a bond, including random drug testing and staying away from a particular person, and she agreed that the family would support Appellant while he was on bond to ensure that he met all the conditions. When asked the amount of a bond she or the family could assist with based on their assets, she responded, "$10,000, like not—I don't know."

Sheriff's Sergeant Shawn Clary testified that he is in the drug enforcement unit of the Sheriff's Office. After learning of Appellant's arrest and release on bond for the aggravated assaults and drug case, he identified Appellant as an "associate" of Lawrence Shahwan, who was then under investigation for a very

5

large and complex indoor marihuana growing operation that had been discovered in Cooke County.

Sergeant Clary testified that the current investigation of Appellant's brother extends to his possibly having financed a "very large and elaborate" marihuana operation, involving two individuals, over $2.5 million worth of marihuana, a sniper rifle, and other assets registered in Lawrence Shahwan's name. The vehicle that Appellant drove at the time of his arrest had a receipt in it for approximately $9,000 worth of butane, a material which had been found at the site of the drug operation, and which is used to make hashish, a controlled substance.

When he read Appellant's arrest report, Sergeant Clary said he noted that the victim had told the deputy responding to the scene that she believed Appellant was trying to harm her because of his brother's illegal narcotics activities. Based on the report, a warrant was obtained for Appellant's arrest on January 2, 2014. Appellant was taken into custody several days later following a traffic violation, and was arrested on the warrant.

The probable cause affidavit supporting the warrant was admitted at the hearing without objection. It states that on December 25, 2013, Allison Lushia, accompanied by her children and a man named Mark Poquette, drove to the area of King Arthur Boulevard and King Mark Drive in Lewisville to give her children Christmas presents. She stated that they stopped a few houses away from Appellant's to avoid him because her daughter told her that she had told

6

Appellant that Lushia was going to provide information to police about Appellant's narcotics activities. Lushia left after a few minutes with Poquette driving. According to Lushia, Appellant chased them in a black Lexus at high speed, struck their vehicle from behind, then pulled alongside it, where she could see clearly that Appellant was driving. Appellant then swerved into their lane and struck their vehicle with his. Poquette called 911 as he tried to get away but Appellant caught up, pulled ahead of them, and slammed on his brakes, causing Poquette to crash into Appellant's vehicle. Appellant exited the car he was driving, pointed something at them which was later determined to be a cell phone, and said, "I'm gonna kill you." Deputy Anthony Savastano, responding to the 911 call, recovered a small quantity of marihuana, which Appellant claimed. Deputy Savastano interviewed Lushia, Poquette, and other third-party witnesses, and concluded that Appellant had intentionally struck Poquette's vehicle. The affidavit requested that a warrant be issued for Appellant's arrest to answer for the "felony offense of obstruction or retaliation" and that bond be set at $500,000.

In Sergeant Clary's opinion, based on the ongoing investigation into the marihuana growing operation in Cooke County and Appellant's association with his brother, Lawrence, who has been identified as a possible financier of the entire operation, Appellant is a flight risk.

Sergeant Clary testified that Appellant reported that he worked at a business owned by his brother when he was arrested and was driving a vehicle owned by his brother, which was the vehicle involved in the collision with

7

Poquette and Lushia. According to Sergeant Clary, the drug enforcement unit had been unable to serve Lawrence with notice of asset seizures that took place as a result of the investigation, and the Sheriff's Office had been unable to locate him since discovering the marihuana operation.

In Sergeant Clary's opinion, Appellant has the resources to make the bond as it currently exists based on several points. First, at the time of his first arrest for aggravated assaults with a deadly weapon on the persons in the vehicle, Appellant was driving a BMW worth approximately $102,000, which had been purchased with a single payment and was registered to Appellant's brother, Lawrence.[2] Second, jail personnel had notified Sergeant Clary of a phone call between Appellant and his mother, who stated that she had the money to make his bond but wanted to have the bond hearing first because she would be unable to recover the money once she posted it.[3] Additionally, he testified, a Texas Workforce Commission report showed that Appellant had reported no income. Sergeant Clary also testified that after Appellant's first arrest, Appellant indicated in a phone call from jail to an unidentified female that he would commit suicide as

---

[2]According to the probable cause affidavit, Lushia told Deputy Savastano that Appellant was driving a black Lexus, but there was only one vehicle collision out of which all of the charges arose. There was no controverting evidence regarding how the collision had occurred.

[3]Additionally, when Appellant was arrested, his cell phone was seized and a search warrant was executed, resulting in discovery of texts indicating that Appellant may have engaged in solicitation of prostitution and drug distribution.

soon as he bonded out. In Sergeant Clary's opinion, this showed that Appellant was not only a flight risk but a danger to himself.

Appellant's criminal history included a 2002 state-jail-felony charge of evading arrest, for which he successfully served a three-year term of deferred adjudication, a contemporaneous state-jail-felony charge of assaulting a public servant, for which he also completed three-years' deferred adjudication, and a 2010 probated misdemeanor conviction for possession of a controlled substance. The number of aggravated assault counts were based on the number of occupants in the vehicle that Appellant was charged with intentionally ramming, and the parties stipulated that the deadly weapon used was the vehicle he had been driving.[4]

The trial court made findings of fact and conclusions of law, listing the witnesses and exhibits, and finding that Sergeant Clary's testimony was credible. The trial court also found that the recorded phone call from the jail contained Appellant's statement that he would harm himself if he were to make bond on this case; and text messages showing that while he was free on bond between December 25, 2013, and January 2, 2014, he was engaging in criminal activity, including selling drugs and soliciting prostitutes; that Appellant's mother testified that Appellant had worked for Lawrence for the past three years; that Appellant had dual American and Jordanian passports; was driving a motor vehicle worth

---

[4]No other weapons were found in the vehicle or alleged.

$102,000 when arrested; that his brother owned at least two gas stations and a tile and flooring business; and that in a recorded phone conversation, Appellant's mother said she had assets to make the $500,000 bond but wanted it reduced to save money. The trial court concluded that applying the facts and evidence to the factors listed in article 17.15 of the code of criminal procedure, the $500,000 bond was reasonable and the habeas corpus application would be denied.

**Standard of Review**

Setting bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by law. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd). Both the federal and state constitutions prohibit excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail is excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. In addition to the constitutional prohibition against excessive bail, the legislature has imposed the following statutory requirements:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

10

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim. Proc. Ann. art. 17.15.

In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The burden of proof, therefore, is upon the applicant who claims his bond is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).

We review the trial court's ruling on a request to reduce bail under an abuse-of-discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We must not disturb the trial court's

11

ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

## Analysis

The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

As commentators as well as one of our sister courts have observed,

"[C]ase law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case" because appellate decisions on bail matters are often brief and avoid extended discussions, and because the "cases are so individualized that generalization from results reached in others is difficult."

*Beard*, 92 S.W.3d at 571 (quoting 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 16.51 (2d ed. 2001)). The third factor under article 17.15 is the nature of the offense for which the defendant is

12

charged and the circumstances under which it was committed. Tex. Code Crim. Proc. Ann. art. 17.15.

When reviewing the appropriate bail for a particular offense, appellate courts often compare bail amounts in other cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense charged. *See Charlesworth*, 600 S.W.2d at 317; *Vasquez*, 558 S.W.2d at 480; *Maldonado v. State*, 999 S.W.2d 91, 95 (Tex. App.—Houston [14th Dist.] 1999, pet ref'd). Although Appellant has not yet been indicted, he stands to be charged with multiple second-degree felonies, for which the punishment is two to twenty years and a $10,000 fine.

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex Parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Ex parte Sabur–Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.). This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Hunt*, 138 S.W.3d at 506. The final statutory factor examines the safety of the victim and the community if the defendant were to be released on bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5).

In setting the amount of bail, the trial court may also give consideration to such factors as (1) the accused's work record, (2) his family and community ties, (3) length of residency, (4) prior criminal record, (5) conformity with previous bond conditions, (6) the existence of any other bonds outstanding, and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Maldonado*, 999 S.W.2d at 93 (citing *Rubac*, 611 S.W.2d at 849–50).

Appellant did not testify at the writ hearing. His counsel argued that Appellant's family and community ties to the area are extremely strong in that his entire family lives here, he has lived here since 1992, and has resided in the United States for twenty-two years, mostly in Denton County in the Carrollton and Lewisville area. Appellant's entire social system is in this area, where he's worked steadily since he was fourteen years of age. His criminal history showed that he successfully completed deferred adjudication and that while on probation, he complied with orders and conditions set by the court.

Appellant's counsel further argued that the Denton County bond schedule listed $5,000 as the amount of a bond for retaliation, which is a third-degree felony, and that the current bond amount is "100 times higher" than normal only because of allegations against Appellant's brother who is under investigation, not for what is described in the offense charged against Appellant, in which there were no injuries and no weapons other than the alleged use of the car as a deadly weapon. Counsel argued that the bonds for the aggravated assaults were all set at $5,000 and that those offenses are more serious than the

14

retaliation charge, and that the lower amount was determined to be sufficient to secure his presence at court and will continue to do so. Counsel asserted that this case involves a standard retaliation, which is a third-degree felony, and that the standard bond should be followed. Counsel further assured the court that Appellant would submit to any conditions the court imposed, including random drug testing, no contact with any of the complainants, wearing an electronic monitoring device, and surrendering all passports.

The State responded that the bond should stay where it was and requested that the surrender of the passports be made a condition, that the bond guidelines are just that, guidelines, and that each bond amount for each case must be set by the specific circumstances and facts of the case. As to whether the bond was used as a "vehicle of oppression," the prosecutor pointed out that testimony had been presented that the assets of the Shahwan family would allow it to make a $500,000 bond and that he believed bond would be made regardless of whether the court kept it at that amount or reduced it.

Considering Appellant's dual citizenship, the ties he has to a foreign country, and the facts and circumstances presented at the hearing, the State requested the trial court to keep the bond at its currently set amount. The prosecutor agreed that the $5,000 bonds set by a magistrate for each of the five counts of second-degree aggravated assault committed by a motor vehicle, in and of themselves, would not seem to be for the most serious offenses, but he argued that what appeared to be a fairly routine case had turned into something

15

entirely different from the perspective of the narcotics investigators who were privy to much more information, which was what the trial court considered when it set the bond at $500,000 for the retaliation charge.

In closing, Appellant's counsel pointed out that to set the bond based on an investigation that Appellant seemed only to be "tenuously" associated with would be the very definition of oppressive, and that the trial court, when it set the bond, did not have the benefit of hearing the evidence that had been presented at the writ hearing.

The trial court judge concluded the hearing by pronouncing that he was going to deny the application based on the facts he had heard, remarking that he saw connections between Appellant and his brother in that they are brothers, that Appellant was driving a BMW owned by the brother, and that this was not a case of just an "erratic driver" causing injuries to unknown occupants of a car but that there were allegations that Appellant had been told that the complainant was going to provide information to the police about illegal narcotics activities and was, therefore, a potential witness.

The trial court further stated that while there was evidence that Appellant did not have independent resources, he had been working for his brother for years according to their mother, and had been supported by the family through providing work for him; yet he had not had a job for which he had reported income for quite a while. Further, the trial court found that there were sufficient

assets considering even the vehicles that Appellant had access to if not outright ownership of.

In light of the evidence regarding the above statutory and other factors, we consider whether the trial court abused its discretion by refusing to reduce Appellant's bond from $500,000. Appellant's argument that the Denton County bond schedule should be followed was not compelling to the trial court, nor is it to us. Not only is the guide merely suggestive, but we agree with our sister court that such a schedule is designed to help magistrates set bail initially, but once a hearing is held on the amount of bail, the schedule is of little or no use, and the court should use the factors set forth in the statute. *See Ex Parte Garcia*, 100 S.W.3d 243, 246–47 (Tex. App.—San Antonio 2001, no pet.).

There is no evidence that the trial court rendered its decision for the purpose of oppression, that is, forcing Appellant to remain incarcerated pending trial but, to the contrary, the evidence is undisputed that Appellant's mother would provide funds for the current bond amount, if necessary. *See, e.g.*, *Ex Parte Benefield*, No. 02-12-00242, 2013 WL 173792, at *5 (Tex. App.—Fort Worth 2013, pet. ref'd) (noting absence of evidence indicating trial court set bail for purpose of forcing defendant to remain incarcerated pending trial). And while Appellant presented evidence of strong family ties and years of work at ordinary jobs, there was no evidence regarding what work he actually did for his brother or what income he received during the previous three years. Additionally, in view of Appellant's dual citizenship and his ties to Jordan, his telephone statements that

17

he would be "gone" (and not just out of the country) as soon as he made bail after his first arrest because he could not handle the aggravated assault charges indicate that he is a flight risk, if not potentially suicidal. *See Clemons*, 220 S.W.3d at 178 (holding $400,000 bond not unconstitutionally excessive, considering, among other facts, that crimes charged were serious with potential for lengthy sentences, and defendant had expressed thoughts of suicide as well as desire to flee to Mexico with family).

Finally, the future effect on complainants or victims and the community is also to be considered in determining the appropriate amount of bail. Tex. Code Crim. Proc. Ann. Art. 17.15(5); *Beard*, 92 S.W.3d at 568. Considering the alleged intentional and violent nature of Appellant's ramming and sideswiping of the vehicle in which Lushia and the others were riding, along with the threat "to kill you" that Lushia and the other passengers attributed to Appellant, along with Lushia's belief that Appellant had targeted her as a potential witness for the State, and considering all of the facts and circumstances detailed above in light of the constitutional and statutory prohibitions against excessive bail, we hold that it is within the zone of reasonable disagreement for the trial court to have concluded that the bail it set for Appellant was reasonable.

## Conclusion

Because we hold that Appellant failed to carry his burden to demonstrate that the set amount of bail is excessive, we also hold that the trial court did not

abuse its discretion by denying Appellant's request for bail reduction, and we affirm the trial court's order denying relief.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 3, 2014