

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00129-CR

## EX PARTE SANDRA LOUISE GARNER

**From the 443rd District Court**
**Ellis County, Texas**
**Trial Court No. 43468CR**

## MEMORANDUM OPINION

In this appeal from the denial of her application for writ of habeas corpus, Sandra Louise Garner complains that the trial court abused its discretion by setting her bail at $1,000,000 because such an amount is excessive. Because we cannot conclude that the trial court abused its discretion, we affirm.

### I. BACKGROUND

Here, Garner was arrested for the murder of her husband, Jon Kevin Garner. Bail was initially set at $2,000,000; however, after Garner filed her first application for writ of habeas corpus seeking reduced bail, the trial court lowered the bail amount to $1,000,000. Thereafter, Garner filed a second application for writ of habeas corpus seeking to further

reduce bail. After a hearing, the trial court declined Garner's request to lower bail. The trial court certified Garner's right to appeal, and this appeal followed.

## II. STANDARD OF REVIEW

An applicant seeking a writ of habeas corpus bears the burden of proving facts that would entitle her to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703-04 (Tex. Crim. App. 1993). Both the federal and state constitutions prohibit excessive bail. U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 11, 13.

The primary purpose for setting bail is to secure the presence of the defendant in court at her trial. *See Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *See Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); *Montalvo v. State*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When reviewing a trial court's determination regarding the amount of bail set, appellate courts apply an abuse-of-discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion). In the exercise of its discretion, a trial court should consider the following

factors set forth in article 17.15 of the Code of Criminal Procedure when setting a

defendant's bail before trial:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015); *see Ludwig v. State*, 812 S.W.2d 323, 324

(Tex. Crim. App. 1991). In addition to these factors, courts should also consider the

defendant's work record, family ties, residency, criminal record, conformity with

previous bond conditions, and aggravating factors involved in the offense. *See Ex parte*

*Rubac*, 611 S.W.2d at 849-50.

### III.    ANALYSIS

On appeal, Garner asserts that the trial court abused its discretion by imposing an

excessive bail amount when the evidence shows that, among other things, she is disabled;

she has made living arrangements after her release; she has no prior criminal history and

outstanding bonds; she has resided in the area her whole life; she has complied with law-

enforcement requests; and she is unable to pay a $100,000 bail amount or 10% of the

$1,000,000 bond.[1]  Instead, Garner requests that her bail be "set somewhere between $20,000.00 and $100,000.00."  We disagree.

## A.  Nature and Circumstances of the Offense

In determining whether the trial court abused its discretion, the defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *See Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd); *see also Montalvo*, 315 S.W.3d at 593 (noting that the consideration of the nature and circumstances of offense requires us to consider range of punishment permitted in event of conviction).  When the nature of the offense is serious and a lengthy sentence following trial is probable, bail should be "set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear."  *See Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Here, Garner is charged with murder, a first-degree felony subject to a maximum punishment of ninety-nine years or life in prison.  *See* TEX. PENAL CODE ANN. §§ 12.32(a), 19.02(b)-(c) (West 2011).  Included in the evidence is an arrest warrant affidavit executed by Chief Boyd Ray Norton of the Maypearl Police Department, which states the following, in relevant part:

---

[1] A bail bondsman typically charges 10% of the total bail amount and requires "substantial collateral" before agreeing to post the bail.  *See Ex parte Sabur-Smith*, 73 S.W.3d 436, 440 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (per curiam).

Officers arrived on scene and located a white male on the floor who has suffered multiple gunshot wounds, one to the head lying in the floor unresponsive. Medical personnel arrived and pronounced the subject deceased at the scene. The subject was presumably identified as Jon Garner, the husband of caller Sandra Garner.

Sandra was reported to be the only person in the home at the time of the shooting and agreed to come to the Ellis County Sheriff's Office to provide a statement. Sandra told investigators she and Jon were asleep in bed when she was awoken by a noise. She stated she woke up and heard two gunshots. She observed a masked male holding a gun and flashlight approach her telling her he was not there to harm her. She continued by saying the subject called her by name, telling her she had treated him right when he worked for her. The perpetrator indicated to her he held a grudge against her husband because he had fired him causing him to lose his family and home. The perpetrator said Jon had always bragged about keeping money in the house and demanded the money. Sandra, she led the perpetrator into their bathroom and retrieved a fire safe where she claimed to have kept money. She gave the subject approximately $18,000. The subject took her to the bathroom and demanded her to count to "100" and if he heard police sirens before, he would come back and kill her.

Jon's body was taken to the Dallas County Medical Examiner's Office for autopsy which took place on January 3, 2018. During the autopsy[,] a projectile was collected from Jon's body. An additional projectile was recovered from a pillow seized during the execution of a search warrant. . . . They determined the projectiles associated in this case were from a .38 caliber.

Additionally, during the execution of this search warrant[,] electronics were seized to include laptops, tablets, and cell phones. Additional search warrants were executed on said electronics and revealed an internet search on one of Sandra's devices on December 28, 2017, "how to kill someone in their sleep." She clicked on a link titled "https://thoughtcatalog.com/juliet-escoria/2013/12/16-steps-to-kill-someone-and-not-get-caught/.["]

On January 5, 2018[,] investigators returned to 149 Creekview Circle to execute another search warrant. During the search[,] investigators turned to a Ford Mustang parked in a detached garage registered to the

decedent, and primary transportation for Sandra Garner. We found the vehicle to be locked and asked Sandra for the keys to the vehicle. Sandra responded by telling us we seized the keys to the car and she no longer had them. From a previous search, investigators knew there was an additional key to the vehicle exist [sic] and should've been accessible. Sandra eventually went in the home and retrieved a key and unlocked the vehicle. Under the driver's seat[,] investigators found a Taurus .38 Special revolver contained within two plastic bags, wrapped in a paper towel. Investigators searched the car on the previous search warrant and knew the gun had to have been placed in the car after the first search warrant.

Projectiles and the recovered Taurus .38 were taken to the Texas Department of Public Safety Crime Lab in Garland for analysis. On January 10, 2018[,] investigators received a crime lab report indicating the projectiles used to kill Jon Garner were a match, and were fired from the gun recovered from Sandra Garner's car.

The foregoing evidence, if true, is strong evidence of Garner's guilt, the premeditated nature of the offense, and indicative of Garner's alleged attempts to hide incriminating evidence—all of which carry the high potential for significant punishment. Furthermore, we note that the $1,000,000 bail amount has been approved by this Court in other felony-murder cases. *See Ex parte Brossett*, 524 S.W.3d 273, 276-77 (Tex. App.—Waco 2016, pet. ref'd) (setting bail at $1 million in a capital murder case) (citing *Ex parte Lewis*, No. 10-13-00448-CR, 2014 Tex. App. LEXIS 6635, at **5-6 (Tex. App.—Waco June 19, 2014, pet. ref'd) (mem. op., not designated for publication) (upholding bail set at $1 million in a capital murder case)). We therefore conclude that this factor favors the denial of the reduction of the bail amount.

## B.    Ability to Make Bail

The accused's ability to make bail is merely one factor to be considered in determining the appropriate amount of bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(4); *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.). Simply because a defendant cannot meet the bail set by the trial court does not automatically render it excessive. *Ex parte Scott*, 122 S.W.3d at 870. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id.*

Garner offered no evidence at the hearing on her habeas application demonstrating how the bail amount was used as an instrument of oppression. However, she did proffer testimony regarding her ability to make bail. Despite testimony from both Garner and her daughter that Garner could not make bail at the set amount, the record also contains testimony that Garner and her deceased husband had recently purchased a home for $260,000 and put an additional $200,000 in cash into upgrades to the house, including a pool and solar panels. Garner did testify that the home is encumbered by a $200,000 mortgage; however, when considering the equity and the upgrades to the home, there is substantial collateral to obtain a loan. Furthermore, Garner admitted to owning three vehicles, including a 2016 pickup truck and a 2018 sedan that she owned outright. She also acknowledged having a credit line of at least $15,000, at least $10,000 in a checking account, and that family members could provide $1,500.

In any event, Garner's daughter testified that Garner cannot access any of these assets because they are a part of Garner's husband's estate and because of a wrongful-death lawsuit that has been filed. But Garner's daughter also stated that she had not spoken to an attorney or someone associated with the estate, nor has she been served with papers regarding the lawsuit. Garner's purported inability to access the assets for the purpose of bail was simply Garner's daughter's personal opinion on the matter. Moreover, Garner's daughter noted that her brother handled financial matters for Garner, and he was not called to testify.

"To show that [s]he is unable to make bail, a defendant generally must show that [her] funds and [her] family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (internal citations omitted). "Unless [s]he has shown that [her] funds and those of [her] family have been exhausted, a defendant must usually show that [s]he made an unsuccessful effort to furnish bail before bail can be determined to be excessive." *Id.* (internal citations omitted). As shown above, Garner's assets have not been exhausted, and she has made no showing of her efforts to furnish bail. Accordingly, this factor favors the denial of the reduction of the bail amount.

## C.    Safety of the Victim and the Community

Regarding the safety of the community, the record shows that Garner has made threats to commit suicide, which necessitated that she submit to an emergency psychiatric

evaluation after the police questioned her. Both Chief Norton and Shane Thompson, Criminal Investigation Lieutenant with the Ellis County Sheriff's Office, testified that Garner's threats of suicide rendered her a flight risk and a danger to the community. *See Clemons v. State*, 220 S.W.3d 176, 179 (Tex. App.—Eastland 2007, no pet.) (per curiam) (holding that a $400,000 bond was not unconstitutionally excessive, considering, among other things, that the charged crimes were serious with potential lengthy sentences, and the defendant has expressed thoughts of suicide, as well as a desire to flee to Mexico with family—both of which exhibit the defendant's "lack of regard for his community ties (as expressed by his desire to flee to Mexico and his thoughts of suicide)"); *see also Ex parte Shahwan*, No. 02-14-0032-CR, 2014 Tex. App. LEXIS 7279, at *22 (Tex. App.—Fort Worth July 3, 2014, no pet.) (suggesting that suicidal thoughts can support a finding that a person is a flight risk).

Additionally, Garner indicated that, upon release, she wants to return to her house, which is situated across the street from the deceased's parents. Garner's in-laws do not want to see Garner and have given her a criminal trespass warning to stay away from them. Chief Norton also recounted that Garner's son, Wesley Miller, had stated that he did not want to stay in the house with Garner "because he didn't know what she was going to do." On the other hand, Garner's daughter testified that she is no danger to the community, especially considering Garner has multiple sclerosis. Nevertheless, we conclude that this factor favors the trial court's denial of bail reduction.

## D.    Community and Family Ties and Other Factors

The record evidence demonstrates that Garner has some family ties to the area. She testified that she lived in Maypearl, Ellis County, Texas, at the time of the offense and that she has lived in the Dallas or Paris, Texas, areas the rest of her life.  Garner's mother lives in Ellis County, and her daughter lives two hours away in Paris.  Furthermore, we note that the evidence shows that Garner has no prior criminal history or prior bonds to show compliance history.  These factors weigh slightly in favor of reducing Garner's bail.

## E.    Summary

In determining whether the trial court abused its discretion by denying Garner's application for writ of habeas corpus, we must decide whether the trial court acted without reference to any guiding rules or principles; or, in other words, we must decide whether the trial court's action was arbitrary or unreasonable.  *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  In doing so, we must keep in mind that merely because the trial court decided a matter within its discretion in a different manner than this Court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  *Id.*  Therefore, affording due deference to the trial court's ruling and considering the article 17.15 factors outlined above, we hold that Garner has failed to demonstrate that the bail amount is excessive.  *See* TEX. CODE CRIM. PROC. ANN. art. 17.15.; *see also Ex parte Rubac*, 611 S.W.2d at 850; *Ex parte Scott*, 122 S.W.3d at 868. Accordingly, we cannot say that the trial court abused its discretion in setting Garner's

bail at $1,000,000 in this felony-murder case.  *See Ex parte Rubac*, 611 S.W.2d at 849-50.  We

overrule Garner's sole issue.

## IV.  CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
*(Chief Justice Gray dissenting with a note)
Affirmed
Opinion delivered and filed July 18, 2018
Do not publish
[CR25]

*(Chief Justice Gray dissents.  A separate opinion will not issue.)

